374 So.2d 843 (1979)
Arthur Melvin WHITE
v.
STATE of Mississippi.
No. 51276.
Supreme Court of Mississippi.
September 12, 1979.
*844 Rainer & Sumrall, William Andy Sumrall, J. Edward Rainer, Pearl, for appellant.
A.F. Summer, Atty. Gen. by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and COFER, JJ.
ROBERTSON, Presiding Justice, for the Court:
On an indictment returned by a duly empaneled grand jury of the Circuit Court of Rankin County, Arthur Melvin White was convicted of armed robbery for taking at gunpoint $21 from Deirde McCrory on December 16, 1977. After a full trial, the jury found him guilty of armed robbery and fixed his sentence at life imprisonment. Whereupon, the court sentenced him to life imprisonment in the custody of the State Department of Corrections.
Deirde McCrory, an 18-year-old sophomore at Millsaps College in Jackson, Mississippi, on December 16, 1977, was driving her Mustang through a parking lot on the college campus when she was flagged down by Arthur White, Ramon Thompson and Melvin Moore. The three got in her car and asked her to take them to St. Dominic's Hospital where they could apply for a job.
She drove them to the hospital, stopped, and asked them to get out. White put a pistol in her ribs and told her to keep driving *845 and she would not be killed. She drove across Pearl River into Rankin County, passed Jackson Preparatory School, also in Rankin County, and down a side road where White and his companions made her stop and get in the back seat. White, who still had his pistol on McCrory, took her purse and took approximately $21 in currency from it. Thompson then drove down a side road into the town of Brandon, the county seat of Rankin County.
Thompson then drove back to Interstate 55 and then north on the interstate, stopping briefly in Vaiden and Batesville. Finally, at Senatobia, Mississippi, they stopped at a service station for gas, and McCrory, under the guise of visiting the restroom, ran to the attendant, told him briefly what happened, and White and his companions drove off without her.
About 6:00 P.M., White, Thompson and Moore were apprehended near Coldwater, Mississippi.
White assigns as error:
I. The court erred in failing to quash the indictment because there has never been a black grand jury foreman in Rankin County.
II. The court erred in refusing to suppress the defendant's waivers and confessions because the defendant was not advised of his constitutional right or allowed to consult an attorney, and was forced and coerced to sign a waiver.
III. The court did not have proper jurisdiction of this case.
IV. The court erred in overruling a motion for mistrial because of testimony presented to the jury concerning a weapon which had not been introduced into evidence.
V. The court erred in overruling the defense motion for a mistrial on the grounds that the court had admitted into evidence a waiver which it later withdrew.
VI. The court erred in allowing Officer C.J. Husbands to be recalled.
VII. The court erred in overruling the defense motion for a mistrial on the grounds that the confession had not been properly introduced.
VIII. The court erred in overruling the motion to exclude all evidence offered by the state, to direct a verdict for the defendant, and in overruling the defense motion for a new trial.
IX. The court erred in overruling the defendant's motion for reduction in sentence on the grounds that the verdict of the jury sentencing the defendant to life imprisonment was cruel and unusual punishment in violation of the eighth amendment.

I.

DID THE TRIAL COURT ERR IN FAILING TO QUASH THE INDICTMENT?
In his pretrial motion, appellant contended that the due process and equal protection clauses of the 14th Amendment had been violated because Rankin County had totally excluded blacks from the position of grand jury foreman. In his proof on this preliminary motion, appellant offered no testimony or statistical evidence of the number of potential black grand jurors in Rankin County to compare with the number of foremen actually chosen. No evidence was offered of the percentage of blacks and whites in the total population of Rankin County. Without this statistical data, it is impossible to make any comparison and impossible to determine whether blacks were under-represented as grand jury foremen, much less the degree of under-representation.
In Rose v. Mitchell, ___ U.S. ___, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the Supreme Court of the United States on July 2, 1979, listed the standards that must be met in making out a prima facie case of discrimination in the selection of a grand jury foreman:
"`The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied... . Next, the degree of *846 underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as [foreman], over a significant period of time... . The method of proof, sometimes called the "rule of exclusion," has been held to be available as a method of proving discrimination in jury selection against a delineated class... . Finally ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption raised by the statistical showing.' [Castaneda v. Partida, 430 U.S. 482, at 494, 97 S.Ct. 1272, at 1280, 51 L.Ed.2d 498].
Only if respondents established a prima facie case of discrimination in the selection of the foreman in accord with this approach, did the burden shift to the State to rebut that prima facie case. Id., at 495, 97 S.Ct., at 1280."
The United States Supreme Court, in reversing the Sixth Circuit Court of Appeals in Rose, found that "respondents failed to make out a prima facie case of discrimination" in that the degree of underrepresentation was not proved and the burden, therefore, did not shift to the state to rebut a prima facie case. The first assignment of error in the case at bar is without merit under Rose. Appellant did not introduce any statistical evidence of the proportion of blacks in the total population of Rankin County, and, therefore, there was no basis of comparison between the proportion of blacks in the total population "to the proportion called to serve as [foreman], over a significant period of time."

II.

DID THE COURT ERR IN REFUSING TO SUPPRESS THE DEFENDANT'S WAIVERS AND CONFESSIONS BECAUSE THE DEFENDANT WAS NOT ADVISED OF HIS CONSTITUTIONAL RIGHT OR ALLOWED TO CONSULT AN ATTORNEY, AND WAS FORCED AND COERCED TO SIGN A WAIVER?
At the suppression hearing, Sheriff Clarence Tapley of Tate County and Highway Patrol Investigator Ralph McClain testified that they each fully explained the Miranda rights to White, Thompson and Moore, and that they each signed a waiver of their rights before each orally confessed. On the next day, December 17, 1977, appellant and his two companions were brought from Senatobia to Jackson by C.J. Husbands (a veteran police officer of 17 1/2 years with the Jackson Police Department) and other officers. Husbands testified that on the trip to Jackson he personally read White his rights and White stated that he understood his rights. All of the officers present when the accused was questioned on three different occasions testified specifically at the preliminary hearings and on the stand that they did not strike, threaten, coerce or promise the accused anything before he voluntarily confessed. Even though White at the preliminary hearing, after the officers had testified, stated that he was threatened and coerced, it was not necessary for the officers to again take the stand and deny these accusations, inasmuch as they had already specifically and in detail denied each allegation during the state's presentation. See Holt v. State, 348 So.2d 434 (Miss. 1977).

III.

DID THE COURT HAVE PROPER JURISDICTION OF THIS CASE?
McCrory testified positively that they crossed the Pearl River into Rankin County, that they passed Jackson Preparatory School, which is in Rankin County, that after White had robbed her at gunpoint of about $21 they came out at Brandon, the County seat of Rankin County. In our opinion, venue and jurisdiction were proved and this assignment of error is without merit.

IV.

SHOULD A MISTRIAL HAVE BEEN GRANTED BECAUSE OF TESTIMONY PRESENTED CONCERNING A WEAPON WHICH HAD NOT BEEN INTRODUCED INTO EVIDENCE?
Constable Adams testified as to the discovery of the pistol in the car, the identification *847 procedures used, and the pistol shown him at trial as being the same one that he found in the car, before the pistol was introduced into evidence. When the pistol was offered as an exhibit, the only objection made was a general one that "the proper predicate for introducing this weapon into evidence has not been lain yet." In Thomas v. State, 358 So.2d 1311 (Miss. 1978), in rejecting a similar argument based upon a general objection, this Court said:
"The reasons for the rule are that we cannot put the trial judge in error on a question not passed upon by him, and also that a litigant cannot wait, without objection, and take chances on a jury verdict, and when the verdict is against him, then take advantage of a motion he should have made at the proper time." 358 So.2d at 1313.
There is no merit in this assignment of error.

V, VI, VII, AND VIII.
We have carefully considered assignments of error V, VI, VII, and VIII, and find them to be without merit. The rulings complained of were well within the sound discretion and judgment of the trial court, and the court did not abuse its discretion.

IX.

WAS THE SENTENCE OF LIFE IMPRISONMENT WITHOUT ELIGIBILITY FOR PAROLE, OF A SIXTEEN YEAR OLD MALE CONVICTED OF ARMED ROBBERY, CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT?
Appellant White was the one who actually poked the pistol into Deirde McCrory's ribs and threatened her with death if she did not drive on. He was also the one who actually robbed her at gunpoint.
This Court can take judicial notice that it has recently affirmed Appellant White's conviction for the kidnapping of the same victim by this same Appellant White.
Officer Husbands testified that when White confessed to the armed robbery, White also stated that they had planned to kill their victim.
This was a heinous crime and we do not feel that life imprisonment is a cruel and unusual punishment under the proven facts of this case.
There being no reversible error in the trial of this case, the conviction and sentence are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.