653 So.2d 912 (1995)
Darla Jo SWINFORD
v.
STATE of Mississippi.
No. 91-KA-00845-SCT.
Supreme Court of Mississippi.
February 16, 1995.
Rehearing Denied April 20, 1995.
*913 Paul R. Scott, Smith Phillips Mitchell Scott & Rutherford, Hernando, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:
This appeal arises from the August 20, 1991 DeSoto County Circuit Court judgment wherein Darla Jo Swinford was convicted of murder. Swinford was sentenced to life in the custody of the Mississippi Department of Corrections and assessed with all court costs. Swinford raises the following assignments of error on appeal:
I. The evidence was insufficient to sustain the guilty verdict and the verdict was contrary to the law and principles of justice.
II. The trial court erred in allowing exhibits into evidence in violation of Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice.
III. The trial court erred in not considering alternative sentences under the Mississippi Youth Court Act.
We find no merit to any of the assignments of error and, accordingly, affirm the lower court's decision.
On December 28, 1990, Jamie Medlin, a Horn Lake, Mississippi teenager, was killed by a shotgun blast to the mouth and face. On December 30, 1990, Darla Jo Swinford, George Johnson, Jr. and Richard Lee Branum were arrested in Escambia County, Florida and returned to DeSoto County where they were charged with the murder.
Darla Swinford began dating George Johnson, Jr. when she was but twelve years old. In December, 1990, George Johnson, Jr. traveled to Florida with his buddy Richard Branum. While her boyfriend was away, Swinford, now fourteen, began dating Jamie Medlin. Upon Johnson's return home to DeSoto County, he immediately became informed *914 about Swinford's two-timing. Being of the jealous type, Johnson decided to take action against Jamie Medlin. In this effort, he was aided by his friend Richard Branum and defendant Swinford.
Through Branum's connections, Johnson borrowed a gun from one Chris Caldwell. Johnson then told Swinford that he wanted to meet and talk with Jamie Medlin. Swinford informed Jamie Medlin of Johnson's wishes and then arranged for them to meet behind a Malone & Hyde factory in DeSoto County. When Johnson and Branum arrived at the designated spot, Swinford and Medlin were already present. Johnson got out of Branum's vehicle with the borrowed gun in tow while Branum parked on another street behind some bushes. Johnson and Medlin stood outside the vehicle and talked for approximately thirty minutes while Swinford remained inside Medlin's vehicle. Branum then returned and continuously urged Johnson to "hurry up." At this time, Johnson blew Jamie Medlin's face away with a close-range blast from the borrowed shotgun. Johnson and Branum dragged the body to some nearby woods. Along with Swinford, the two proceeded to Florida with Branum driving his vehicle and Johnson and Swinford driving Medlin's vehicle. Swinford knew of the plan to go to Florida and had packed some two weeks' worth of clothing. The trio was arrested in Escambia County, Florida two days later.
On March 14, 1991, Darla Jo Swinford was indicted by the DeSoto County Grand Jury on one count of capital murder and on one count of conspiracy to commit capital murder. On June 14, 1991, with all parties agreeing, Circuit Court Judge George C. Carlson, Jr. ordered that Swinford's count of capital murder be reduced to that of murder. At trial, Swinford was convicted of the murder charge but found not guilty on the charge of conspiracy to commit murder. Swinford perfected this appeal from said verdict and subsequent sentence of life.

STANDARD OF REVIEW
In Benson v. State, 551 So.2d 188 (Miss. 1989), this Court repeated its well-known standard of review when a party challenges the legal sufficiency of the evidence presented at trial:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. See e.g., Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984).
Benson, 551 So.2d at 192-93 (quoting McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987)).

DISCUSSION OF LAW

I. Was the evidence insufficient to sustain the guilty verdict and was the verdict contrary to the law and principles of justice?
As the verdict indicates, Swinford was found not guilty of conspiring to commit murder. Swinford argues that since the State failed to prove that she entered into a conspiracy to murder Jamie Medlin, it was necessary that the State prove beyond a reasonable doubt that she assisted Johnson in murdering Medlin by an overt act of assistance or by an oral expression of encouragement. Swinford contends that the jury necessarily rejected the State's theory that she knowingly participated in a plan with Johnson and Branum to kill Medlin and concludes that the evidence of her involvement in the murder on the theory of aiding and abetting is, therefore, insufficient. In so arguing, *915 Swinford, however, assigned no error to the trial court.
To the contrary, "[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an `aider and abettor' and is equally guilty with the principal offender. "Sayles v. State, 552 So.2d 1383, 1389 (Miss. 1989). See Bullock v. State, 391 So.2d 601, 606 (Miss. 1980), cert. denied, 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981). In Walters v. State, 218 Miss. 166, 65 So.2d 465, 467 (1953), this Court provided:
[I]n the case of Wynn v. State, 63 Miss. 260 [(1885)], the Court said: "Aiding and abetting is defined to be `the offense committed by those persons who, although not the direct perpetrators of a crime, are yet present at its commission, doing some act to render aid to the actual perpetrator.' ... And such aiding and abetting may be manifested by acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition."
There is no dispute that George Johnson killed Jamie Medlin. Nor is there any dispute that defendant Swinford was present at the time of the killing and also arranged for Jamie Medlin to be at the place where the killing took place. Swinford testified that she suspected trouble when she saw Johnson arrive with a gun. She readily admitted that she did nothing, knowing that Johnson stood armed talking with Medlin for approximately thirty minutes. She neither tried to stop the discussion or leave for help. There is also no dispute that she subsequently traveled with Johnson and Branum to Florida with packed bags.
Swinford testified that she only thought that Johnson wanted to talk to Medlin on the day of the murder and that she traveled to Florida with the boys out of fear. However, this testimony does not support the verdict and is in fact refuted by Branum's testimony that Swinford knew of the plan to kill Medlin. There exists ample evidence in support of Swinford's murder conviction. Swinford's actions met the requirements for aiding and abetting, and therefore her conviction for murder stands affirmed.

II. Did the trial court err in allowing exhibits into evidence in violation of Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice?
Swinford contends that the prosecution violated Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice when it failed to timely disclose three letters written by Swinford to Johnson while both were incarcerated. The trial court allowed these three letters to be received into evidence. Rule 4.06 provides:
Upon written request by the defendant, the prosecution shall disclose to each defendant or to his or her attorney, and permit him or her to inspect, copy, test, and photograph, without the necessity of court order, the following which is in the possession, custody, or control of the State, or the existence of which is known, or by the exercise of due diligence may become known, to the prosecution:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved, of each such witness and the substance of any oral statement made by any such witness;
(2) Copy of any written or recorded statement of defendant and the substance of any oral statement made by the defendant... .
Miss.Unif.Crim.R.Cir.Ct.Prac. 4.06.
The record reveals that a preliminary hearing was held on February 1, 1991 for all three criminal defendants, Swinford, Johnson and Branum. At the preliminary hearing, counsel for Swinford joined a motion for 4.06 discovery:
BY MR. SCOTT [COUNSEL FOR SWINFORD]: Your Honor, I would join in that [motion for a 4.06 discovery], but I would suggest that I move on the record here, with the Court Reporter present, for 4.06 discovery, rather than following up with a written motion. If Mr. Kelly at a *916 later date would like for me to do that, I will, but I think we're on record here, and I, for the record, move for discovery under 4.06 and state that I will reciprocate as we have agreed with Mr. Kelly earlier in the day.
BY THE COURT: Mr. Kelly, do you want to require the necessity of written 4.06's or ...?
BY MR. KELLY [ASSISTANT DISTRICT ATTORNEY]: Your Honor, the Supreme Court says that all 4.06 requests must be filed in writing, but I do trust Mr. Scott to that extent.
All agreed to provide discovery and reciprocal discovery. Initial discovery was provided, and on July 3, 1991, the State filed additional discovery which included the exhibits which Swinford now contends should not have been allowed into evidence. Thinking that the amended discovery did not include the exhibits in question, the prosecution again on July 8, 1991, the first day of trial, filed the three letters as a supplement to its earlier discovery. This same supplement was also faxed to defense counsel's office on Saturday, July 6, 1991. At trial and during Swinford's first discovery objection that is not at issue in the case at hand, the court noted:
[I]n the order dated March 25, 1991, there were various deadlines that were set, including the fact that any requests for discovery should be made by the Defendant on or before April 5, 1991, and all discovery would be completed 45 days from the date of the order. And then I see on June 28, 1991, the Defendant's Motion for Discovery Under Rule 4.06. If I've calculated right, that motion being filed about 84 days after the deadline for filing for discovery, but in any event, the State did respond to discovery about five days after the motion for discovery was filed, that being on July 3, and just voluminous documents attached to discovery and supplemental discovery.
Defense counsel later objected to the three letters written by Swinford that were offered into evidence arguing they were not timely furnished pursuant to the discovery rule.
The prosecution argued that, pursuant to the oral agreement at the February 1, 1991, preliminary hearing, he had provided all discovery that was available at that time and that when defense counsel failed to file a written discovery request by the deadline imposed by the court, no other disclosures were made because that would have left the State unprotected from receiving reciprocal discovery. The prosecution noted that upon Swinford's late filing of the 4.06 motion, it, nevertheless, promptly provided the additional discovery which included the three letters in question.
The trial court ruled that, although late, the discovery rule had been invoked. It held that the letters in question were contained within the material the State disclosed in its timely response to the discovery motion, and therefore, the State did not violate the discovery rule.
In McCaine v. State, 591 So.2d 833, 835 (Miss. 1991), this Court provided:
With regard to issues involving alleged discovery violations, the discovery request must be made in writing in order to be enforceable under Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice. Morris v. State, 436 So.2d 1381, 1388 (Miss. 1983). This written request "trigger[s] the state's obligation to produce discovery under Rule 4.06." Moore v. State, 536 So.2d 909, 910 (Miss. 1988) ...
(emphasis added). Defendant's written motion for discovery was filed on June 28, 1991. The prosecution responded to the motion five days later on July 3, 1991. In Kelly v. State, 553 So.2d 517 (Miss. 1989), the issue of timeliness of disclosure prior to trial was addressed. In Kelly, the last discovery was filed six days before the trial began. 553 So.2d at 520. This Court applied the procedure set forth in Box v. State, 437 So.2d 19 (Miss. 1983) in its determination that no discovery rule was violated:
The Box guidelines are clearly articulated in Cole v. State, 525 So.2d 365 (Miss. 1987):
1. Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing *917 the witness, inspecting the physical evidence, etc.
2. If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
3. If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
Kelly, 553 So.2d at 520. In Kelly, this Court found that no discovery rule had been violated since the defendant was given an opportunity to examine the physical evidence before trial and because Kelly never requested a continuance as required in Box. Although this Court in Kelly states that it addresses the issue of timeliness of disclosures prior to trial, the opinion actually dismisses the issue on the premise that since there was never a requested continuance by defense counsel, any possible violation of Rule 4.06 was waived. Id. However, the Kelly opinion suggests that, in any event, defense counsel had no grounds to object since he had the opportunity to examine the evidence in question six days prior to trial. Id. at 520.
We hold that the trial court was not in error for allowing the three letters into evidence since the prosecution promptly provided defense counsel with discovery after it made its written request. There has been no showing that the procedures in Box were not followed, and, as such, there was no discovery violation in the case at hand.

III. Did the trial court err in not considering alternative sentences under the Mississippi Youth Court Act?
Swinford lastly contends that the trial court judge abused his discretion by not stating in the record his reasons for declining to utilize possible alternative criminal sanctions for juvenile offenders provided for in the Youth Court Act. Miss. Code Ann. § 43-21-159(3) (Supp. 1990) reads, in part:
[I]f any child shall be convicted by any circuit court, the trial judge may, in his discretion, commit such child to the county jail for any term not in excess of one (1) year, or he may suspend sentence and release on probation, or commit such child to the custody of the Department of Corrections or impose a fine as though such child was an adult, under such terms and conditions as he may prescribe... .
In May v. State, 398 So.2d 1331, 1340 (Miss. 1981), we set forth the Legislature's intentions in the passing of Miss. Code Ann. Section 43-21-159 as we remanded the cause to the lower court for resentencing:
We think the Legislature, in providing alternative methods of sentencing of minors, intended in cases involving special circumstances surrounding a minor defendant, that the trial judge consider seriously those alternative enumerated in the statute and that the presence or absence of facilities for care of a minor offender be considered in mitigation of the punishment provided by statute.
In Erwin v. State, 557 So.2d 799, 802-03 (Miss. 1990), this Court provided:
[S]o that this Court may make appropriate evaluation of the discretion exercised by the trial judge, it is appropriate for the trial judge to see to it that the record clearly reflects the reasons which prompted him to exercise his discretion in utilizing or not utilizing the alternatives afforded. The trial court should let the record disclose the facts which prompted the exercise of his discretion either way.
In the case at hand, the record reflects the following statements made by the trial court judge:
I'm aware of the fact and have had to deal with, unfortunately had to deal with a fair number of cases of persons 14 years, 15 years of age, who were tried or pled guilty to capital offenses and then had to consider those sentencing alternative[s], all the alternatives set out by statute and by case law certainly the May v. State case, and I'm aware of those cases and aware of the requirements.
In this particular case, I'm satisfied that the defendant having been indicted and tried as an adult, found guilty of the crime *918 of murder, based on the jury verdict, the Court must impose the mandatory sentence of life imprisonment as set out by statute, recognizing again the alternative considerations that can be made as set out in May v. State and other cases.
In the case of May v. State, 398 So.2d 1331 (Miss. 1981), this Court was faced with a different fact scenario in that the fourteen-year-old criminal suffered from mental retardation. This is not the case with Swinford since all indications suggest that she was a typical Horn Lake teenager. See White v. State, 374 So.2d 843 (Miss. 1979) (life sentence without parole imposed upon sixteen-year-old defendant did not constitute cruel and unusual punishment under Eighth Amendment).
The trial court judge was well within his discretion in sentencing Swinford to life imprisonment since she aided and abetted in the brutal, senseless murder of Jamie Medlin. The judge stated that he was very much aware of the requirements in May v. State because of the many cases he had handled before dealing with teenagers charged with capital offenses. It should not go unnoticed that had the trial judge simply stated more explicitly his reasons for refusing to impose an alternative criminal sanction, this would not be an issue. For this reason, we admonish the trial judge; however, under the facts of this case, we hold that although minimal, the trial court judge adequately addressed the reasons for not utilizing the alternatives afforded. No reversible error was committed in the lower court, and the verdict and sentence is accordingly affirmed.
CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and PITTMAN, ROBERTS and SMITH, JJ., concur.
BANKS, J., concurs in part and dissents in part with separate written opinion joined by HAWKINS, C.J., and SULLIVAN, J.
BANKS, Justice, concurring in part and dissenting in part:
On December 28, 1990, twenty-two days after her fourteenth birthday, Darla Jo Swinford was present when her eighteen year-old boyfriend shot and killed a young man whom Darla had dated. Darla was eventually tried on the charges of conspiracy to commit murder and murder. She was acquitted of the former and convicted of the latter. Without the benefit of a presentence report, Judge George Carlson imposed a life sentence with the following statement:
I'm aware of the fact and have had to deal with, unfortunately had to deal with a fair number of cases of persons 14 years, 15 years of age, who were tried or pled guilty to capital offenses and then had to consider those sentencing alternative[s], all the alternatives set out by statute and by case law, certainly the May v. State case, and I'm aware of those cases and I'm aware of the requirements.
In this particular case, I'm satisfied that the defendant having been indicted and tried as an adult, found guilty of the crime of murder, based on the jury verdict, the Court must impose the mandatory sentence of life imprisonment as set out by statute, recognizing again the alternative considerations that can be made as set out in May v. State and other cases.
The court then released Swinford on bail pending appeal.
The question which divides us is whether the trial court complied with this court's requirements with reference to Miss. Code Ann. § 43-21-159(3) (1972) as last pronounced in Erwin v. State, 557 So.2d 799 (Miss. 1990). That statute empowers a circuit judge, when faced with the prospect of sentencing a juvenile as defined in the Youth Court Act, to consider commitment to the county jail for one (1) year, suspension of sentence and release on probation or, commitment to the Department of Corrections or imposition of a fine as though such child was an adult, under such terms and conditions as he may prescribe. Miss. Code Ann. § 43-21-159(3) (Supp. 1993).
In Erwin, we reversed a sentence of a seventeen year-old on grounds that it exceeded *919 his life expectancy. Erwin, 557 So.2d at 799. For guidance on remand we recounted our treatment of the juvenile sentencing statute from May v. State, 398 So.2d 1331, 1338 (Miss. 1981), through Reed v. State, 526 So.2d 538, 541 (Miss. 1988). Recognizing that we were dealing with the serious offense of rape and kidnapping we observed that:
[w]hile it seems most unlikely that the Court would suspend the sentence, impose a fine, commit the child to the county jail for a term which cannot exceed one year in a case which even approaches the callous brutality involved in this case, it is, nevertheless, possible that under different circumstances and with extenuating factors involved, a court might utilize one of the alternatives set out. For that reason, and so that this Court may make appropriate evaluation of the discretion exercised by the trial judge, it is appropriate for the trial judge to see to it that the record clearly reflects the reasons which prompted him to exercise his discretion in utilizing or not utilizing the alternatives afforded. The trial court should let the record disclose the facts which prompted the exercise of his discretion either way.
557 So.2d at 802-803.
In Reed we faced a murder conviction of a seventeen-year old. Reed, 526 So.2d at 538. While we approved the actions of the trial judge, noting that he had reviewed extensively twenty-four letters submitted by acquaintances of the defendant and specifically took the defendant's "tender years" into consideration, we left little doubt that the provisions of the statutes and our pronouncements apply even to the crime of murder. Id. at 541. Reed predates Erwin where we announced the requirement that "the record disclose the facts which prompted the exercise of his discretion either way." In my view, the record here simply does not disclose that.
Here we have a murder conviction based almost entirely upon a letter written by the fourteen year old girl, while she was in jail to the eighteen-year old who did the killing in which she relayed the following:
... I told my attorney that I new (sic) what was going to happen because I could not take the pain any more and plus Keven (sic) called and told them it was going to happen and he said he heard me and you talking about it on the phone so I had to tell the truth so I'm looking for about six months to a year in jail but I thank (sic) I deserve it for what I put Jammie (sic) thrue (sic) and for what me you and Richard did to him... .
Richard is the third accomplice. He gave equivocal testimony that he and Darla knew that Jamie would be killed but never really placed Darla in such a discussion. It is clear that Darla agreed to bring Jamie to a predetermined spot. Another witness, who supplied the gun, testified that George, the eighteen year-old shooter, had said he would kill Jamie but not in a manner in which the witness took him seriously or in the presence of Darla. The only connection between Darla and a prearranged intent to kill is supposedly a telephone conversation in which Darla was allegedly on the other end, but no witness related positive statement of an intent to kill during that conversation. Richard, the only witness to the telephone conversation, from George's end, testified that he gathered that it was on for Jamie to be brought to the spot and to be killed "I guess." There was also testimony concerning Jamie threatening to kick George's "a. ."
It seems that sometime in late November or early December Richard, 19, and George went to Florida on "vacation." They encountered some difficulty with the law there. They returned to Southhaven near Christmas. George learned that Darla, with whom he had lived off and on for two years at her mother's house and with whom he had a sexual relationship, had been dating the victim. There was a discussion back and forth with Darla in which she denied sexual relations with Jamie but related Jamie's threat to kick George's "a. ." Eventually, George got Darla to arrange a meeting with Jamie. In the meantime George had been talking to others about killing Jamie. According to Chris, who loaned the weapon, George said he would use it to scare Jamie. On the fateful day, Jamie arrived driving his car with Darla as a passenger. After a 25-30 minute conversation George shot Jamie and killed him. George, Darla, and Richard then *920 drove to Florida where they were arrested two days later. Darla had with her sufficient clothes for a trip to Florida and most of the evidence suggests that she intended to go. Her trial testimony was, however, that she had packed clothes to spend two days with her mother and she was on her way back with those clothes and others that she had taken to her mother's to be washed.
None of this is to attack the sufficiency of the evidence. I agree with the majority in rejecting that contention. The letters and the inconsistencies in the stories of the principals is sufficient in my view to sustain the verdict, despite the fact that the jury found her not guilty of conspiracy. If the evidence is sufficient, the fact that other crimes sustainable by the same evidence were not found does not detract from the verdict. U.S. v. Gordon, 780 F.2d 1165 (5th Cir.Miss. 1986); Johnson v. State, 491 So.2d 834 (Miss. 1986). I relate the circumstances as I view them from the record only to provide context.
In that vein, I have found nothing in the record which tells us any more about Darla than that related above. In my view, Erwin requires that we know more about her. More importantly, Erwin requires that we know what facts the court relied upon to exercise its discretion to reject the dispositional alternatives. What we have is a recitation of awareness of the alternatives and that a guilty verdict was returned. These are givens. If Erwin requires anything at all, it requires some rationale as to why the statutory alternatives are not appropriate, and factual support for that rationale.
I would affirm the conviction, and remand to the circuit court for additional findings or a new sentencing hearing. Failing that, I would give Erwin a decent burial by saying explicitly that it is overruled.
HAWKINS, C.J., and SULLIVAN, J., join this opinion.