726 So.2d 151 (1998)
STATE of Mississippi
v.
U.G.
No. 94-CA-00773-SCT.
Supreme Court of Mississippi.
October 29, 1998.
Rehearing Denied January 14, 1999.
*152 Christopher Klotz, Jackson, Attorney for Appellee.
Patricia Watkins Bennett, Jackson, Attorney for Appellant.
EN BANC.
PITTMAN, Presiding Justice, for the Court:
¶ 1. This appeal presents a question of first impression for this Court. The State has appealed the granting of a motion to transfer a case from circuit court, which had original jurisdiction, to youth court, claiming that the circuit court abused its discretion. The issue presented is important due to the number of youth criminal offenders in this State. We find that the record was not adequately developed so that the interest of justice could be considered by the circuit court. We further find that the circuit court did not allow the State the opportunity to establish its proof on the interest of justice, but looked only to the interest of the juvenile in question. For this reason we reverse and remand.

I.
¶ 2. On April 14, 1994, U. G., Dedrick Terrell Roach and Dontellus Funches were indicted by a Hinds County grand jury on two separate counts of armed robbery. On *153 June 8, 1994, U.G. filed a motion requesting that the circuit court transfer his case to the Hinds County Youth Court pursuant to Mississippi Code § 43-21-159(4) (Supp.1993). After a hearing on June 17, 1994, the circuit court transferred U. G.'s case to the Hinds County Youth Court on July 1, 1994. Aggrieved by the decision of the circuit court to transfer jurisdiction, the State of Mississippi filed its appeal with this Court.
¶ 3. Mississippi law classifies persons who have not yet reached the age of eighteen as youths. Miss.Code Ann. § 43-21-105(d)(Supp.1997). The youth court has original jurisdiction over all cases involving youths other than those excepted by Miss. Code Ann. § 43-21-151. "Any act attempted or committed by a child, which if committed by an adult would be punishable under state or federal law by life imprisonment or death, will be in the original jurisdiction of the circuit court." Miss.Code Ann. § 43-21-151(1)(a)(Supp.1997). Armed robbery is punishable under Mississippi law by a maximum penalty of life imprisonment. Miss.Code Ann. § 97-3-79(1994). Thus, the circuit court had original jurisdiction. U.G. was fourteen years of age at the time of the alleged crime and indictment. At the time of the transfer hearing, U.G. was three months shy of his fifteenth birthday. At the transfer hearing, the circuit court heard testimony from two witnesses. Vicky Jenkins, an employee of the Mississippi Department of Corrections, and Dr. Timothy Summers, a psychiatrist, testified for U. G.
¶ 4. Jenkins testified about some of the services provided at the Department of Corrections, including counseling, psychological care and psychiatric treatment. There is no specialized treatment for juveniles. Education, rehabilitation, and counseling for adults and juveniles are all the same. The Department of Corrections does not have any special counselors or people who are specialized in the area of child psychology. Jenkins also testified that when an inmate's size or inability to cope in the general population warranted protective service, it was provided. There were no special educational programs for juveniles in the adult system. If a juvenile such as U. G., a fourteen year-old seventh grader, wanted to go to school, he would be attending the same classes as an adult criminal.
¶ 5. Jenkins further testified, based on fourteen years of experience in dealing with the Mississippi Department of Corrections, that juvenile offenders were "usually preyed upon, physically, sexually, and everything." She testified that U.G. had already run into a problem at the Hinds County Detention Center where other inmates were taking his food from him. She explained that in the adult system, the only remedy to these types of problems was to place the juvenile into segregation.
¶ 6. Dr. Summers, whom the court recognized as an expert in psychiatry over the State's objection, testified next. He stated that approximately twenty-five percent of his practice consisted of evaluating and treating children, particularly troubled adolescents. Dr. Summers talked with U.G. "for approximately three hours on one occasion." The only information within Dr. Summers' knowledge of the case was provided either by U.G. or his counsel. He was unable to verify any of the information he received.
¶ 7. When asked his expert opinion about the effects of placing U.G. in an adult facility, Dr. Summers' response was, "[Y]ou can anticipate that he's going to learn a lot about how to be criminal and a lot of his values, a lot of his morals, a lot of his ethics are going to be primarily centered around criminal behavior." Dr. Summers further testified that it was his opinion that U.G. did not comprehend the seriousness of his situation due to his level of maturity and his level of psychological development.
¶ 8. The essence of Dr. Summers' testimony was that he did not think a juvenile should be treated as an adult. U. G.'s age was the main factor in Dr. Summers' testimony. Even though U.G. would turn fifteen three months after the hearing, Dr. Summers testified that it would not change his opinion. Dr. Summers stated that his opinion applied to youth in the age range of thirteen to sixteen. The basis for Dr. Summers' opinion regarding U.G. was that "[t]his young man has never been emancipated."
*154 ¶ 9. The court called U. G.'s mother and questioned her in chambers about U. G.'s schooling and family background. Counsel for both U.G. and the State were present at this time. While the court reporter was present for this questioning, Nwabek was not under oath as a witness in this hearing. The court denied both sides an opportunity to question or cross-examine Nwabek. However, counsel for the defendant was allowed to clarify Nwabek's answers from time to time. During the transfer hearing, the court granted U. G.'s motion to exclude the testimony of the victims. The State notes that subsequent to the hearing, the court received and considered a letter from the Hinds County Youth Court Administrator and U. G.'s school records. These records are not a part of the court record and therefore are not properly before this Court. Neither the State nor the defense were allowed to view and inspect these records.
¶ 10. After the hearing, the court presented its opinion and order on July 1, 1994. The order states that "the Court is persuaded that the sole factors to be considered in determining whether or not to transfer this cause [are] (1) the best interests of the Defendant/Juvenile; and (2) the interest of justice." Further, the court held that "it would be in the best interest of the Defendant U.G. and also in the best interest of justice, that this cause be transferred to the Hinds County Youth Court."

Standard of Review
¶ 11. The decision to transfer a case to youth court is committed to the circuit judge's sound discretion. Therefore, the standard of review for this Court is an abuse of discretion. Parker v. State, 194 Miss. 895, 904, 13 So.2d 620, 620 (1943). After careful review of the abbreviated record in this case, we find that an abuse of discretion amounting to reversible error is present.

II.
¶ 12. Section 99-35-103 of the Mississippi Code sets out when a state or municipality may appeal a decision of a lower court. Section 99-35-103 reads in pertinent part as follows:
[t]he state or any municipal corporation may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases:
(a)From a judgment sustaining a demurrer to, or a motion to quash an indictment, or an affidavit charging crime; but such appeals shall not bar or preclude another prosecution of the defendant for the same offense.
...
Miss.Code Ann. § 99-35-103(a)(1994). This Court finds that the ruling by the lower court in the case at bar is tantamount to quashing the indictment.
¶ 13. The Hinds County Grand Jury indicted U.G. on April 14, 1994, for two counts of armed robbery. Courts in this State generally take the proceedings of the grand jury very seriously; we are no different. Armed robbery is classified as a capital offense punishable by life in prison, and the fact that the Hinds County Grand Jury found sufficient evidence to return an indictment charging U.G. with two counts of armed robbery with a deadly weapon is not taken lightly by this Court.
¶ 14. Section 43-21-203(5)(1993), as it pertains to conduct of proceedings in youth court, states "[n]o proceeding by the youth court in cases involving children shall be a criminal proceeding but shall be entirely of a civil nature." Since none of the proceedings in the youth court are criminal in nature, any indictment previously entered against a juvenile offender who is subsequently transferred to youth court cannot be pursued by the youth court. The decision by the circuit court in the case sub judice failed to take the findings of the Hinds County Grand Jury into consideration. Therefore, this Court finds that the decision by the lower court to transfer U.G. to youth court constituted quashing the indictment returned by the grand jury.
¶ 15. Further, since § 99-35-103 allows a state to appeal from a judgment of the circuit court in a criminal cause in cases where the judgment sustains a motion to quash an indictment, the appeal by the Hinds County *155 District Attorney in the case at bar is properly before this Court.

III.
¶ 16. There are two factors which the judge must consider when considering a motion to transfer from circuit court to youth court: (1) the interest of the child, and (2) the interest of justice. Miss.Code Ann. § 43-21-159(3)(1993) reads in pertinent part as follows:
In any case wherein the defendant is a child as defined in this chapter and of which the circuit court has original jurisdiction, the circuit judge, upon a finding that it would be in the best interest of such child and in the interest of justice, may at any stage of the proceedings prior to the attachment of jeopardy transfer such proceedings to the youth court for further proceedings....
(Emphasis added.)
¶ 17. Neither the best interest of the child nor the "interest of justice" overrides the other, but they can be separate interests and must be given full review by the circuit court. The interest of justice is not subordinate to the best interest of the child. Often, but not always, the two separate interests will merge and be concurrent or commensurate. However, at all times the lower court must consider both interests separately.
¶ 18. During the transfer hearing, the State requested that the court consider the factors enumerated in § 43-21-157(5). Section 43-21-157(5)(1993) reads as follows:
The factors which shall be considered by the youth court in determining the reasonable prospects of rehabilitation within the juvenile justice system are:
(a) Whether or not the alleged offense constituted a substantial danger to the public;
(b) The seriousness of the alleged offense;
(c) Whether or not the transfer is required to protect the community;
(d) Whether or not the alleged offense was committed in an aggressive, violent, premeditated or wilful manner;
(e) Whether the alleged offense was against persons or against property, greater weight being given to the offense against persons, especially if personal injury resulted;
(f) The sophistication, maturity and educational background of the child;
(g) The child's home situation, emotional condition and life style;
(h) The history of the child, including experience with the juvenile justice system, other courts, probation, commitments to juvenile institutions or other placements;
(i) Whether or not the child can be retained in the juvenile justice system long enough for effective treatment or rehabilitation;
(j) The dispositional resources available to the juvenile justice system;
(k) Dispositional resources available to the adult correctional system for the child if treated as an adult; and
(l) Any other factors deemed relevant by the youth court.
The circuit court declined to consider the factors as requested by the State. While this Court finds that consideration of these twelve factors was not mandated by statute, these factors do provide a guideline or starting point for circuit court judges when entertaining a motion to transfer a case to youth court. It is by no means an all inclusive list, nor a mandatory one; it is a roadmap of sorts. The judge below did consider the factors as set out in Foster v. State, 639 So.2d 1263, 1297 (Miss.1994), when considering U. G.'s best interest. He subpoenaed U. G.'s youth court records and school records. He questioned U. G.'s mother and heard testimony from Jenkins about the treatment of juveniles in the Department of Corrections. We find no error in the circuit court's finding that transfer was in U. G.'s best interest.

IV.
¶ 19. This Court finds after careful review that the circuit court failed to properly address the issue of the "interest of justice" the public's interest. The Court is mandated by statute to consider matters beyond the *156 best interest of the child. The lower court must also review issues before it from an "interest of justice" or public interest viewpoint. This trial judge may have done so in the case sub judice, but there are no record entries that are reviewable by this Court pointing to such a broader consideration by the trial court. The State has a duty to represent the public's interest in prosecuting violent criminals, no matter what their age. The State must have an opportunity to respond to the motion to transfer. The State must be allowed an opportunity to rebut the movant's evidence before the judge and an opportunity to present the State's evidence, if any.
¶ 20. The judge denied the State's request to present evidence from the victims of the crime but did allow the State to make a proffer of what its evidence would have been. In doing so, the judge stated that he would take everything the State said as factually true. He did not allow the defense an opportunity to rebut any of the evidence proffered by the State. This was not an uncontested matter. Like the State, the movant should have the opportunity to challenge any evidence offered during the hearing.
¶ 21. The circuit court failed to consider the larger interest of justice or the public or State's interest in this case, and thus failed to provide this Court with an adequate record to review whether he abused his discretion. The State was not allowed an opportunity to properly challenge the motion to transfer to youth court, and because of this the decision of the circuit court transferring the case to youth court must be reversed and remanded.

V.
¶ 22. During the hearing, the judge ordered that certain records be presented for his inspection. He requested the youth court records for U. G., as well as his Jackson Public School disciplinary record. In regard to the youth court records, Miss.Code Ann. § 43-21-261(1993) recognizes the confidentiality of certain documents and states that they may disclosed to certain parties only through court order. Section 43-21-261(2)(1993) reads in pertinent part as follows:
Any records involving children which are disclosed under an order of the youth court and the contents thereof shall be kept confidential by the person or agency to whom the record is disclosed except as provided in the order. Any further disclosure of any records involving children shall be made only under an order of the youth court as provided in this section.
¶ 23. The circuit court ordered that the Youth Court and school records of U.G. be produced for an in camera inspection. This Court finds that the judge abused his discretion in not allowing either party to review the records. Moreover, he has denied this Court an opportunity to review his exercise of discretion by refusal to allow into evidence all that he considered in making his decision.
¶ 24. Both the State and the defense counsel have a right to see the youth court and school records and challenge them if necessary. The judge does have discretion to determine the extent and purpose of disclosure. However, he abused his discretion in this case by keeping all records from the parties, and consequently, from this Court. The parties could have reviewed the records and made any challenges in camera while still protecting the defendant.

VI.
¶ 25. Finally, the State contends that it should have been allowed to cross-examine U. G.'s mother. It should be noted that neither party was allowed to examine or cross-examine U. G.'s mother. This Court finds that the circuit court abused its discretion by relying upon unsworn testimony. This is not an uncontested matter or ex parte hearing. Both parties should have had the opportunity to challenge any evidence before the judge. This includes evidence that is presented by the parties or solicited by the judge. Procedurally, the judge abused his discretion by soliciting this unsworn testimony and refusing to allow either party to cross-examine the witness.

*157 VII.
¶ 26. This Court recognizes that a circuit judge has discretion in a number of matters. He has discretion in ruling on a motion to transfer a case to youth court. He has discretion in determining the extent and purpose of disclosure of youth court records. This Court acknowledges that to find an abuse of that discretion, amounting to reversible error on appeal, is a difficult matter. Nevertheless, a judge may not disregard procedure in his courtroom. The judge in this case abused his discretion in a number of ways that resulted in an inadequate record. First, he failed to consider the interest of justice. Second, he erred in allowing the State to proffer testimony without the defense counsel having an opportunity to challenge it, and then accepting all that the State offered as true. Third, he erroneously denied all access to U. G.'s youth court and school records to either party. Fourth, he abused his discretion by examining U. G.'s mother in his chambers while refusing to allow either side an opportunity to question U. G.'s mother themselves. The judgment of the circuit court is reversed and remanded for a new hearing on the motion to transfer.
¶ 27. REVERSED AND REMANDED FOR A HEARING ON MOTION TO TRANSFER.
JAMES L. ROBERTS, Jr., SMITH, MILLS and WALLER, JJ., concur.
BANKS, J., dissents with separate written opinion joined by SULLIVAN, P.J., and McRAE, J.
PRATHER, C.J., joins this opinion in part.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, P.J., and BANKS, J.
BANKS, Justice, dissenting:
¶ 28. Because I believe that this is an appeal by the state not allowed by statute and because I believe that there has been no abuse of discretion shown with respect to the judgment of the circuit court, I dissent.

I.
¶ 29. As with any case in which the state seeks review of an adverse decision in a criminal case, the threshold question is its authority to do so. State v. Insley, 606 So.2d 600, 602 (Miss.1992). The state claims authority, as it must, under Miss.Code Ann. § 99-35-103 (1972). It suggests that the order of the circuit court transferring this matter to the youth court was a final judgment and that in the absence of an appeal the state would be left without a remedy. U. G.'s argument that this is an interlocutory appeal notwithstanding, it appears that the state is correct in characterizing the circuit court judgment as final for appeal purposes. We have never held, however, that the absence of another remedy is sufficient reason to justify a grant of appeal. The question is whether this appeal may be characterized as one allowed by a fair interpretation of the statute.
¶ 30. Our statute delimiting the authority of the state to appeal in criminal cases reads as follows:
The state or any municipal corporation may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases: (a) From a judgment sustaining a demurrer to, or a motion to quash an indictment, or an affidavit charging crime; but such appeals shall not bar or preclude another prosecution of the defendant for the same offense. (b) From a judgment actually acquitting the defendant where a question of law has been decided adversely to the state or municipality; but in such case the appeal shall not subject the defendant to further prosecution nor shall the judgment of acquittal be reversed, but the Supreme Court shall nevertheless decide the question of law presented. (c) From a ruling adverse to the state or municipality in every case in which the defendant is convicted and prosecutes an appeal; and the case shall be treated as if a cross appeal had been formally presented by the state. All questions of law thus presented shall be decided by the Supreme Court.
The writer is unable to find an instance in which this statute has been treated in the *158 context of a discretionary transfer of a cause to youth court, either before or after indictment.
¶ 31. In State v. Burrill, 312 So.2d 1, 3 (Miss.1975) this Court interpreted the statute to apply only to a "criminal cause," and concluded that a "criminal cause" was not present where the action complained of was an order granting access to grand jury minutes prior to the issuance of any indictment and in the absence of any other criminal charge appearing in the record. Recently, in State v. Harrison, 648 So.2d 66, 68 (Miss.1994) we followed established precedent and approved the appeal of the dismissal of an indictment for violation of the 270-day statute. Finally, we have rejected an asserted appeal by the state of a grant of judgment notwithstanding the verdict in a criminal case on the basis of the statute. See State v. Insley, 606 So.2d 600 (Miss.1992). There we cited, with approval, the rule expressed in United States v. Sanges, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892) to the effect that the government may not take an appeal in a criminal case without express statutory authority. Id. at 602-04.
¶ 32. It is obvious that the transfer of a cause to youth court does not precisely fit the language of either of the three subsections of the statute. Here, unlike in Burrill, there was clearly a criminal cause in progress. U.G. had been indicted and the motion was filed within that cause number. While the order in question is final, it is no more enumerated by the statute authorizing state appeals than is an order granting judgment notwithstanding the verdict. In a sense, the order may be equated with an order granting a demurrer to an indictment but it differs in that the issue of transfer to juvenile court is one left to the sound discretion of the trial judge whereas the issue on demurrer or motion to quash is a purely legal matter subject to de novo review.
¶ 33. The argument that the decision escapes review entirely if review is not permitted pursuant to this statute ignores the fact that other decisions in the criminal process, including judgments notwithstanding the verdict escape review. Moreover, it ignores the possibility that the state may assert grounds in the youth court for transfer of the case to the circuit court pursuant to the provisions of Miss.Code Ann. § 43-21-157 (1993). Under that section the youth court may transfer proceedings against juveniles to the trial court having jurisdiction if they were adults upon a finding by clear and convincing evidence that "there are no reasonable prospects for rehabilitation within the juvenile justice system." Tellingly, such an order is subject to review at the circuit court level only at the behest of the child. Such a review is on the record made at the youth court, however, and may be reversed only upon the substantial evidence standard of review.
¶ 34. We see then, that upon initial consideration, the circuit court may transfer a cause involving a juvenile offender of which it has original jurisdiction upon a finding that it would be in the best interest of the child and in the interest of justice. Miss.Code Ann. § 43-21-159 (1993). There is no heightened burden of proof and the decision is lodged in the sound discretion of the court. Id. On the other hand, a decision to transfer from youth court requires the heightened standard of proof but, once made, is reversible by the circuit court only on the basis of lack of substantial evidence. Miss.Code Ann. § 43-21-157 (1993). I find in this a legislative preference for youth court treatment of youths charged with crime wholly consistent with the denial of review of the initial decision to transfer original jurisdiction cases to the youth court. I would hold that the state does not have statutory authority to pursue this appeal.

II.
¶ 35. If the appeal was properly before us, I would affirm the judgment of the trial court. Contrary to the majority assertion my review of the record indicates that the trial court considered both the best interest of the child and the interests of justice. Its recitation of that fact has been considered sufficient by this Court when the decision was not to accord the child juvenile treatment. See Swinford v. State, 653 So.2d 912 (Miss.1995) (holding that a circuit court recitation that it had considered juvenile alternatives *159 sufficient without specific findings.) Beyond that, however, the trial court had before it testimony of a psychiatrist and that of a corrections official.
¶ 36. Rather than try the underlying merits of the case, the court took the detailed factual allegations as to the nature of the offense charged as true. The majority some how faults the trial court for this pointing to the fact that this is an adversary proceeding. First, U.G. posed no objection. Secondly, the trial court was in no position to try the factual issue of what happened. What was before the court was a decision which forum was proper for such a child. It is entirely proper in this setting to consider the factual allegations of the state as true for purposes of considering the seriousness of the crime and the interest of justice.
¶ 37. The State and the majority complain that no cross-examination was allowed for U. G.'s mother and that the court reviewed documents not of record. While it is true that the court announced that it would not allow cross-examination in response to its in-chambers, on-the-record conversation with U. G.'s mother no party sought either cross-examination or to propound questions through the court either before or after the fact. U. G.'s counsel affirmatively stated that he had no questions and the state remained silent. It is silent to this day as to what if any questions on cross-examination it had.
¶ 38. The trial court order does make reference to a letter from the youth court certifying that U.G. had no juvenile record and Jackson Public School records showing no disciplinary action. The record does not reflect that the state was denied access to these records. The court entered orders directing that youth court and school records be furnished for inspection by the court. At a point in the proceedings the state requested that any information provided to the court be provided to the state. U.G. through counsel asserted that should occur after in camera inspection. The court expressed an assumption that the request referred to matters other than what was ordered to be produced in camera. There was no response from the state to that expressed assumption. Neither was any protest lodged with the trial court after its opinion and order to the effect that the order relied upon matters not of record and not supplied to the state. I do not believe that these issues are properly preserved for our review. See Harvey v. State, 666 So.2d 798 (Miss.1995); Chase v. State, 645 So.2d 829 (Miss.1994); Stringer v. State, 279 So.2d 156 (Miss.1973).
¶ 39. Finally, to the extent that there were procedural errors, I do not see that they affected the result and any matters not uncovered by the state could be presented to the youth court in pursuant of a certification order as discussed above.
¶ 40. For the foregoing reasons, I would dismiss this appeal as unauthorized. Failing that, I would affirm.
SULLIVAN, P.J., and McRAE, J., join this opinion.
PRATHER, C.J., joins in part.
McRAE, Justice, dissenting:
¶ 41. I join Justice Banks's dissent, in that the State does not have the statutory authority to pursue this appeal. In addition, I write to address the feasibility of allowing our circuit courts to retain original jurisdiction over making decisions regarding the transfer of causes to youth courts.

I.
¶ 42. The logic used by the majority to justify the State's authority to appeal is strained because the ruling by the court below does not equate with the quashing of an indictment. Unlike quashing an indictment, which can terminate a case, a decision to transfer a case to youth court does not mean that judicial labor has come to an end regarding the charge against a youth. Rather, it means that the youth court is better suited to determine the best disposition of the case against the youthful offender. The decision to transfer does not diminish the grand jury's conclusion that the State may seek a conviction against an alleged offender. Whether the proceedings in youth court are labeled civil or criminal, the youth court still can impose punishment upon the offender. Therefore, the majority has no basis to analogize *160 the instant case to the quashing of an indictment, and the State should not have been allowed to pursue this appeal.

II.
¶ 43. Additionally, the majority states that the circuit court looked only to the interest of the juvenile in this case, as opposed to the State's interest of justice. However, the interest of justice is realized when the interest of the juvenile has justice incorporated into the determination of whether a criminal matter should first be resolved in the youth court instead of the circuit court, which should only be trying adults. The interest of justice is a concept that resides within the spirit of the youth court statutes, and it cannot be reshaped to override the interest of a juvenile. Unfortunately, giving the circuit court original jurisdiction over transfer of causes to youth court does just that.
¶ 44. The youth court should retain jurisdiction to decide whether a youth crime case should be kept in the youth court or transferred to the circuit court. Miss.Code Ann. § 43-21-157(5)(1993) and Foster v. State, 639 So.2d 1263 (Miss.1994), both mentioned by the majority, clearly require that the youth court weigh several factors when determining the reasonable prospects of rehabilitation within the juvenile justice system, not the circuit court. The statute presupposes that the youth court will have jurisdiction and will determine if a case is to be certified to the circuit court. Moreover, the youth court is better situated to make decisions regarding the interest of the juvenile, as is reflected by the Legislature's reference to the youth court within Miss.Code Ann. § 43-21-157(5); the circuit court does not have the facilities to evaluate juvenile interests. If the circuit court always makes the decision on whether a case should be transferred to the youth court, the role of the youth court is then severely diminished. In effect, the district attorney will be deciding whether a youthful offender will be prosecuted as an adult or a juvenile.

III.
¶ 45. In conclusion, this case is not properly before this Court. Further, the majority ignores the statute giving the youth court authority to determine the prospects of rehabilitation within the juvenile justice system. The case should be reviewed in the youth court first, and pursuant to Miss.Code Ann. 43-21-157(5), the youth court judge can then decide whether to transfer the case to circuit court. Accordingly, I dissent.
SULLIVAN, P.J., and BANKS, J., join this opinion.