## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-01313-SCT

*BOBBIE JONES AND LATROY DANIELS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/95 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RAYMOND L. WONG |
| | BOYD P. ATKINSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/16/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/7/98 |

**BEFORE PITTMAN, P.J., McRAE AND ROBERTS, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Appellants Bobbie Jones and Latroy "Duke" Daniels were convicted of manslaughter and murder, respectively, in the 1995 shooting death of Joseph "Faygo" McClenton. Jones and Daniels appealed this decision based on several assignments of error. Finding no merit in any of the appellants' assignments of error, we affirm.

### I. BACKGROUND

¶2. On Friday, May 19, 1995, Jones and her boyfriend, Laten Hemingway, traveled to Shelby, Mississippi. Upon arrival, they stopped at Pablo's, moved on to the Do-Drop Inn, which is about one block from Pablo's, and eventually ended up back at Pablo's. Other patrons who were at Pablo's included Gloria "Bowley" Green, Roosevelt "Rooster" Funchess, and Bessie Anderson.

¶3. Daniels, the son of Bobbie Jones, was also in Shelby on May 19, 1995, visiting friends and patronizing various nightclubs. Eventually Daniels found his mother and her boyfriend at Pablo's. Daniels testified that he borrowed fifty cents from his mother to buy ice for drinks. He said that

afterward, he left to retrieve a .25 caliber pistol which he kept under a bridge about 200 yards from where McClenton was shot later that evening.

¶4. Apparently, Daniels, McClenton and others were drinking alcohol and smoking marijuana on the night of the shooting. Daniels showed McClenton the gun, and McClenton fired the gun into the air. Allegedly, this act started an argument between the two. Daniels testified that he sent the gun back by a friend, Kelvin "Kiddo" Green (one of Gloria Green's sons), and had Green put the gun in Hemingway's car.

¶5. Later that night, Daniels and McClenton again started arguing about the shooting of the gun by McClenton. Eventually they began pushing each other. Daniels then went to the car, opened the trunk and retrieved the gun. Rosalyn "Mossie" Britton, who had been outside the Do-Drop Inn, came into Pablo's to inform Gloria Green that Green's sons, Daniels, and McClenton were about to get into a fight. Green left Pablo's to get her own sons. Jones left a few minutes later to check on Daniels. She walked down the sidewalk to the Do-Drop Inn. McClenton told Jones that there was nothing to the fight between him and Daniels.

¶6. Meanwhile, Daniels was brandishing the gun. Gloria Green tried to hold Daniels back, but Daniels broke away from her. He approached McClenton, getting within ten or twelve feet of him. Daniels told others nearby to move. Then he fired the pistol, striking McClenton in the right temple and killing him instantly. Daniels threw down the gun and ran to the police station. At that time, Jones, who was near the fence next to the Do-Drop Inn, fell to the ground and began crying hysterically.

¶7. On September 26, 1995, the grand jury of Bolivar County returned an indictment against Jones and Daniels for the McClenton murder. The defendants were tried jointly for the crime on October 23, 1995. The jury returned verdicts on October 25, 1995, finding Jones guilty of manslaughter and Daniels guilty of murder. Jones subsequently filed a motion for JNOV/new trial, which was summarily denied by the trial judge. The jury then sentenced Jones to sixteen years with eight years suspended upon completion of the first eight years. Daniels received life imprisonment.

¶8. It is from these convictions and sentences that Jones and Daniels appeal to this Court. On appeal, each defendant filed a separate brief.

## II. JONES'S ASSIGNMENTS OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT REQUIRING THE PROSECUTION TO TURN OVER THE PRIOR STATEMENT OF LATEN HEMINGWAY TO THE DEFENSE WHEN THE PROSECUTION'S CROSS EXAMINATION IMPEACHED LATEN HEMINGWAY WITH HIS PRIOR INCONSISTENT STATEMENT.

¶9. Jones first alleges that the trial court should have required the prosecution to turn over a previously taped statement of Laten Hemingway which was used to impeach him at trial. The State responds that the issue is procedurally barred because Jones did not object or move for continuance or mistrial. Additionally, the State argues that Jones failed to request the statement during Hemingway's examination, and when she did, she did not specify which witness statements she wanted.

¶10. Jones relies on Rule 613(a) of the Mississippi Rules of Evidence, which requires that a prior statement used to examine a witness shall be shown or disclosed to opposing counsel. "In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel." Miss. R. Evid. 613(a). Jones alleges that the content of Laten Hemingway's taped statement to the prosecution was not disclosed to the defense in criminal discovery. However, Rule 613 is not concerned with discovery. The comment to the rule states, "The provision allowing disclosure to counsel is designed to protect against unwarranted insinuations that a statement has been made when the fact is to the contrary." Miss. R. Evid. 613 cmt.

¶11. Neither party offers substantive precedent for their respective positions. Jones cites *Williams v. State*, 595 So. 2d 1299, 1307 (Miss. 1992), wherein the defendant Williams was required to tender the prior inconsistent statements of a prosecution witness to counsel opposite prior to the cross-examination. However, this Court noted that "this was but a formality, as the statements were ones [the prosecution witness] had previously given law enforcement officers." *Id.* Here the defendant alleges that the content of Hemingway's taped statement to the prosecution was not disclosed to the defense in discovery. However, the defense never objected at trial to the use of the statement or the fact that the defense had no knowledge of the statement. Hemingway's cross-examination, from the very beginning, was based on his previous statement to the prosecution.

¶12. Not until the statement of William Crocker did Jones's attorney describe the situation to the trial court. The State took statements of five witnesses whose identities had been disclosed to them by the defense. Then Jones's attorney alleged that he had not been provided copies of the statements and demanded that the transcribed statements be turned over to him. The prosecution and the trial court explained that the defense would only be entitled to the statements if they would be used in the prosecution's case in chief. When the request for the statements was made by the defense, the prosecution had already ended its case-in-chief.

¶13. Clearly, the defense should have been allowed to review the statement used to impeach, as provided in Miss. R. Evid. 613(a). However, the defense also should have made the correct objection at the time impeachment was begun. Nonetheless, a review of Hemingway's testimony shows that the attempt at impeachment by the prosecution basically was a repetition of the witness's previous testimony. Since nothing new was gleaned from the use of the previously recorded statement, we find that the trial court's error in failing to make the prosecution give the defense a transcribed statement was harmless.

THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT BOBBIE JONES ACTED IN CONCERT OR AIDED AND ABETTED LATROY DANIELS.

¶14. Jones alleges that the prosecution failed to prove beyond a reasonable doubt the requirement of a common design between Bobbie Jones and Latroy Daniels. Jones claims that she neither provided Daniels with the gun nor said or did anything to encourage Daniels to shoot and kill McClenton. The State responds that the proof was sufficient to support a jury finding that Jones both aided and encouraged Daniels in shooting McClenton.

¶15. In the recent case of *Hoops v. State*, 681 So.2d 521, 533-34 (Miss. 1996), this Court, quoting *Sayles v. State*, 552 So. 2d 1383, 1389 (Miss. 1989), stated that "'[a]ny person who is present at the

commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender.'" The primary distinction between the accessory-before-the-fact and an aider and abettor is the actual or constructive presence of the party. If a person was actually or constructively present at the offense, that person is an aider and abettor, based on his participation. *Pleasant v. State*, 701 So. 2d 799, 803 (Miss. 1997). Therefore, in order to find Jones guilty of McClenton's murder, the jury had to find, beyond a reasonable doubt, that Jones actually shot McClenton or that Jones aided, counseled or encouraged others in the commission of McClenton's murder. *See Hooker v. State*, No. 92-KA-00242-SCT slip op. at 4 (Miss. Mar. 21, 1996).

¶16. Jones cites the case of *Daniels v. State*, 293 So. 2d 19, 20 (Miss. 1974) for the proposition that the prosecution failed to prove the required element of common design between Jones and Daniels. However, no proof of common design is required to establish murder by aiding and abetting, with which Jones was charged. "Common design" is required when defendants are charged with conspiracy. *See Jones v. State*, 567 So. 2d 1189, 1191 (Miss. 1990). Neither defendant was charged with conspiracy in this case, so the argument avails Jones nothing.

¶17. Jones also cites the case of *Swinford v. State*, 653 So. 2d 912, 915 (Miss. 1995) to support her contention that the State did not prove that her acts unmistakably evinced a design to encourage, incite, or approve of the crime. In that case, Swinford was present at the time of the killing and arranged for the victim to be at the scene of the murder. *Id.* Swinford admitted that she did nothing, knowing that Johnson [the shooter] stood armed talking with the victim for approximately thirty minutes. *Id.* Swinford neither tried to stop the discussion or leave for help. *Id.* After the shooting, Swinford also traveled to Florida with the shooter. *Id.*

¶18. Testimony regarding whether Jones provided Daniels with the gun is conflicting. Roosevelt Funchess testified that the gun used to shoot McClenton was given to Daniels by Jones. However, Daniels testified that he retrieved the gun from under a bridge on the morning before the shooting. He said that he kept the gun under the bridge because he did not want Jones to find out that he owned it. Daniels also testified that when he went into Pablo's on the night of the shooting, he only got fifty cents from his mother for some ice. Raymond Sherrod supported this, testifying that while he and Kelvin Green waited outside, Daniels went inside Pablo's to get the fifty cents from his mother. However, Sherrod also stated that Daniels had gotten the gun after he came out of Pablo's and before he returned with the ice. Hemingway testified that Jones did not have a gun that night, but he could not say for sure that he knew what Jones gave to Daniels when Daniels came to Pablo's on the evening of the shooting. Marcus Wallace noted that McClenton and Daniels were arguing because McClenton had shot "Duke's [Daniels's] mother's gun." Wallace stated that he knew that the gun belonged to Jones because Daniels had said to McClenton, "I asked you not to shoot my mother's gun."

¶19. What happened at the scene of the crime is somewhat clearer. Several witnesses testified that when Daniels approached McClenton with the gun, Jones encouraged Daniels to go ahead and shoot McClenton. Wallace testified that Jones said, "If you are going to kill him, don't go up there playing. Go on and kill him and get it over with." Shawanda Davis confirmed that she had given previous statements to the police that Jones said, "If you are going to use the gun, shoot the mother fucker." Rosalyn Britton testified that after Daniels had been holding the gun at McClenton for about twenty

or thirty seconds, his mother said, "What are you holding it for? Shoot the mother fucker." Jackie Williams testified that Jones stated, "Don't go over there bullshitting. If you are going to shoot him, shoot him." In contrast, Jones denied saying anything to Daniels. Daniels said that he didn't remember his mother saying anything.

¶20. In the face of this conflicting testimony, the jury is charged with evaluating credibility of the witnesses. "If there is substantial evidence consistent with the verdict, evidence which is of such weight and quality that, keeping the burden of proof of beyond a reasonable doubt in mind, 'fairminded [jurors] in exercise of impartial judgment might reach different conclusions,' the jury's verdict should be allowed." *Bounds v. State*, 688 So. 2d 1362, 1372 (Miss. 1997). The testimony of Funchess and Wallace was the only credible evidence to support the jury's conclusion that Jones provided Daniels with the gun he used to shoot McClenton. Nonetheless, there was substantial credible evidence that Jones encouraged Daniels to shoot McClenton. Several witnesses placed Jones at the scene of the shooting, urging Daniels to fire at McClenton. The combination of testimony regarding Jones's alleged role in providing Daniels with the gun and encouraging Daniels to shoot McClenton is sufficient to support the jury's finding that Jones aided and abetted in McClenton's murder. Accordingly, this assignment of error is without merit.

THE TRIAL COURT COMMITTED ERROR IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT BECAUSE THE PROSECUTION FAILED TO PROVE ITS CASE AGAINST THE APPELLANT, AND THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND THE VERDICT EVIDENCES BIAS AND PREJUDICE AGAINST THE APPELLANT, AND WAS BASED SOLELY UPON SUSPICION AND SPECULATION.

¶21. Jones alleges that the State failed to prove its case against her and that the verdict was against the overwhelming weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict. This Court will reverse only where the trial court abused its discretion in not granting a new trial. *Isaac v. State*, 645 So. 2d 903, 907 (Miss. 1994) (citations omitted).

> In considering a motion for a directed verdict, this Court on review must consider the evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled.

*Smith v. State*, 646 So. 2d 538, 542 (Miss. 1994). This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Robinson v. State*, 662 So. 2d 1100, 1105 (Miss. 1995). It has long been the case law of this state that malice aforethought, premeditated design, and deliberate design all mean the same thing. *Windham v. State*, 602 So. 2d 799, 801 (Miss. 1992).

¶22. As previously stated, there is some evidence that Jones provided the gun to Daniels, and even more evidence that Jones encouraged Daniels to shoot McClenton. Given the standard of review, the facts tending to support the jury verdict should be taken as true. We conclude that there was credible evidence to support a jury finding that Jones aided and abetted in the shooting of McClenton.

## III. DANIELS'S ASSIGNMENTS OF ERROR

THE TRIAL COURT COMMITTED ERROR IN NOT GRANTING A SEVERANCE OF THE CO-DEFENDANT.

¶23. Daniels argues that based on Miss. Code Ann. § 99-15-47 and Rule 4.04 of the Uniform Criminal Rules of Circuit Court, his trial should have been severed from that of his mother. Daniels claims that there was a conflict between his defense and the defense of his co-defendant. The State responds that there was no prejudice because the two defendants did not give testimony that laid guilt on each other.

¶24. Rule 9.03 of the Uniform Rules of Circuit and County Court Practice, which replaced Rule 4.04, was in effect at the time of Daniels's trial, and is the proper authority.

### RULE 9.03 SEVERANCE

The granting or refusing of severance of defendants in cases not involving the death penalty shall be in the discretion of the trial judge.

The court may, on motion of the state or the defendant, grant a severance of offenses whenever:

1. If before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

2. If during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

U.R.C.C.C. 9.03.

¶25. This Court has held that the granting or denying of a severance when filed after arraignment is in the sound discretion of the trial court. *Langston v. State*, 373 So. 2d 611, 612 (Miss. 1979). The decision of the lower court to grant or deny a motion for severance is reversible only where it constitutes an abuse of discretion. *Walker v. State*, 430 So. 2d 418, 422 (Miss. 1983). This leads, necessarily, to the question of whether the lower court's refusal to grant a motion for severance was an abuse of his discretion. Where "all evidence introduced at trial went to the guilt of both appellants and not to one more than the other," it is not error to try the defendants jointly. *Blanks v. State*, 451 So. 2d 775, 777 (Miss. 1984). "The trial court abuses its discretion in not granting a severance if the defense of one codefendant tends to exculpate himself at the expense of the other codefendant, or the balance of the evidence tilts more towards the guilt of one codefendant than to the other." *Gossett v. State*, 660 So. 2d 1285, 1289 (Miss. 1995). "Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion." *Tillman v. State*, 606 So. 2d 1103, 1106 (Miss. 1992); *Duckworth v. State*, 477 So. 2d 935, 937 (Miss. 1985).

¶26. Daniels argues that because the district attorney offered Daniels the opportunity to plead guilty to manslaughter if his mother pleaded guilty to manslaughter, and later the plea was rejected because his mother would not plead guilty, Daniels was prejudiced, as anticipated in *Tillman*. However, here

there was no testimony from either defendant that tends to exculpate one defendant at the expense of the other. Jones testified that she did not give Daniels a gun and that she did not say anything to encourage Daniels to shoot McClenton. Daniels testified that he kept the gun under a bridge on Lake Street and that on the night of the shooting, he went to get the gun from under the bridge, not from his mother. He also stated that he got fifty cents from his mother and that he went to get the gun from the car. He also said that he didn't see his mother at the scene of the shooting and that she never said anything to encourage him to shoot McClenton.

¶27. This testimony indicates that the stories of Daniels and Jones coincided rather than conflicted. The evidence did not exculpate Daniels at Jones's expense. Evidence showed that Daniels shot McClenton. Evidence, though conflicting, showed that Jones gave Daniels the gun he used and encouraged him to shoot McClenton. Therefore, this assignment of error is without merit.

THE TRIAL COURT COMMITTED ERROR IN THAT SECTION 97-3-19(A) MISSISSIPPI CODE OF 1972, IS UNCONSTITUTIONAL TO THE VAGUENESS AS TO THE DEFINITION OF "DELIBERATE DESIGN" AS WELL AS THE REMOVAL OF THE WORDING OF THE STATUTE OF THE "INTENT" REQUIREMENT NECESSARY IN ALL CRIMINAL CASES.

¶28. Daniels asserts that Miss. Code Ann. § 97-3-19(a) is unconstitutional due to its failure to clearly define "deliberate design." The State responds that Daniels does not meet his burden of proving beyond a reasonable doubt that the statute is unconstitutionally vague.

¶29. A party challenging the constitutionality of a statute must prove his case by showing the unconstitutionality of the statute beyond a reasonable doubt. *Vance v. Lincoln County Dep't of Pub. Welfare*, 582 So. 2d 414, 419 (Miss. 1991). "This Court will strike down a statute on constitutional grounds only where it appears beyond all reasonable doubt that such statute violates the constitution." *Wells v. Panola County Bd. of Educ.*, 645 So. 2d 883, 888 (Miss. 1994).

> We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusion affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of the validity of a statute. If possible, courts should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

*Loden v. Mississippi Pub. Serv. Comm'n*, 279 So. 2d 636, 640 (Miss. 1973) (citations omitted); *see also Hoops*, 681 So. 2d at 536.

¶30. This Court has repeatedly concluded that "deliberate design" is synonymous with "malice aforethought." *Tran v. State*, 681 So. 2d 514, 517 (Miss. 1996); *Windham*, 602 So. 2d at 801; *Blanks v. State*, 542 So. 2d 222, 227 n.4 (Miss. 1989); *Fairman v. State*, 513 So. 2d 910, 913 (Miss. 1987); *Johnson v. State*, 475 So. 2d 1136, 1139 (Miss. 1985). "'[D]eliberate always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. 'Design' means to calculate, plan, contemplate ... deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.'" *Gossett v. State*, 660 So. 2d at 1293 (quoting *Windham v. State*, 520 So.2d 123, 127 (Miss. 1987).

¶31. Daniels claims that the statute has removed the required element of intent from deliberate design murder. Although this Court has never spoken to the actual constitutionality of the statute, this Court has recognized instructions based on it. In *Tran v. State*, this Court found appropriate an instruction that read, "Deliberate design means intent to kill, without authority of law and not being legally justifiable, legally excusable or under circumstances that would reduce the act to a lesser crime." *Tran*, 681 So. 2d at 516. The Court stated that "[t]here is no flaw in the instruction given as it does not state that deliberate design can be formed at the very moment of the fatal act, . . ." *Id.* This Court has also acknowledged that "deliberate design" to take the life of another connotes intent to kill. *Peterson v. State*, 242 So. 2d 420, 427 (Miss. 1970).

¶32. Daniels has failed to prove that Miss. Code Ann. § 97-3-19 is unconstitutional. The cases cited by Daniels, *City of Jackson v. Gordon*, 119 Miss. 325, 80 So. 785 (1919) and *King v. State*, 254 Miss. 162, 181 So. 2d 158 (1965), are inapposite. "No criminal responsibility attaches to a slaying which is the result of accident or misadventure *in the true sense of those terms*. Accordingly, an accused in a prosecution for homicide may set up accident or misadventure as a defense." *King*, 254 Miss. at 167, 181 So. 2d at 160 (emphasis added). While Daniels stated that he only meant to scare McClenton, he cannot be heard to say that his act was an accident when he fired a loaded gun at a person standing near a crowd. The jury heard sufficient evidence to contradict Daniels's position, including evidence of Daniels's statements that he was going to kill McClenton.

¶33. Beyond that, Daniels does not demonstrate any vagueness as to the definition of deliberate design. The statute does not make accidental occurrences into criminal acts because "deliberate design" is required for a murder conviction under Miss. Code Ann. § 97-3-19(1)(a)(1994). Further, the statutory phrase "deliberate design to effect the death of the person killed" clearly connotes an intent to kill and malice aforethought. Finally, the jury had to have found intent in Daniels's action because they were given instructions on murder (requiring intent) and manslaughter (no intent). This assignment of error has no merit.

THE TRIAL COURT COMMITTED ERROR IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT BECAUSE THE PROSECUTION FAILED TO PROVE ITS CASE AGAINST THE APPELLANT, AND THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND THE VERDICT EVIDENCES BIAS AND PREJUDICE AGAINST THE APPELLANT.

¶34. Finally, Daniels, like Jones, alleges that the State failed to prove its case against him and that the verdict was against the overwhelming weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict. This Court will reverse only where the trial court abused its discretion in not granting a new trial. *Isaac*, 645 So.2d at 907. This Court will not order a new trial "'unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.'" *Robinson*, 662 So. 2d at 1105 (quoting *McNeal v. State*, 617 So. 2d 999, 1009 (Miss. 1993)).

¶35. There was substantial credible evidence supporting a murder conviction for Daniels. Despite Daniels's allegations that he and McClenton were friends and that he was just trying to scare McClenton, there is evidence that Daniels meant to do exactly what he did. Daniels warned others to

get out of the way and walked very close to McClenton. He also stated that he was going to kill McClenton. Further, an inference of intent to kill is raised through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury. *Windham*, 602 So. 2d at 802. "Malice too may be inferred when such a high degree of recklessness is involved, raising the level of crime from 'culpable negligence' manslaughter to 'depraved heart' murder." *Clark v. State*, 693 So. 2d 927, 931 (Miss. 1997). In *Clark*, we relied on the defendant's statement to the police following the shooting, the transcript of a 911 emergency call in which the defendant repeatedly threatened to kill the victim, and the testimony at trial to indicate a sufficient degree of recklessness or indifference to human life to support a conviction for deliberate design murder. *Id. See also Robinson v. State*, 571 So. 2d 275, 277-78 (Miss. 1990) (Court upheld conviction of defendant for aggravated assault when victim suffered no injuries even though he only intended to scare victim, where defendant threatened to kill victim, repeatedly told co-workers that he planned to burn the victim's house down, and chased victim out of house and threatened to kill her). Conduct directed at a single individual which is likely to produce death may evince a deliberate design to kill. *Berry v. State*, 575 So. 2d 1, 12 (Miss. 1990).

¶36. Given the applicable standard, those facts supporting the jury verdict must be taken as true. Accordingly, we take to be true the evidence that Daniels threatened to kill McClenton and that he actually shot McClenton. With this evidence, we conclude that the verdict was not against the overwhelming weight of the evidence and that the verdict was not influenced by bias and prejudice.

## IV. CONCLUSION

¶37. Neither Jones nor Daniels has presented this Court with meritorious arguments on appeal. As a result, we affirm the convictions and corresponding sentences of Bobbie Jones and Latroy Daniels.

¶38. **AS TO DANIELS: CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. AS TO JONES: CONVICTION OF MANSLAUGHTER AND SENTENCE OF SIXTEEN (16) YEARS WITH EIGHT (8) YEARS SUSPENDED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**