828 So.2d 1279 (2002)
Fritz James GARCIA, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00478-COA.
Court of Appeals of Mississippi.
October 22, 2002.
*1282 Thomas D. Berry, Bay St. Louis, attorney for appellant.
Office of Attorney General, Billy L. Gore, District Attorney, Cono A. Caranna, II, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
THOMAS, J., for the court.
¶ 1. Fritz Garcia was convicted of murder and sentenced to life in prison without the possibility of parole. Aggrieved he asserts the following on appeal:
I. THE LOWER COURT IMPEDED APPELLANT IN HIS EFFORT TO PROVE INSANITY DEFENSE.
II. IT WAS ERROR NOT TO SUPPRESS THE ENTIRE STATEMENT GIVEN BY APPELLANT BEFORE HIS ATTORNEY WAS PRESENT.
III. THE TRIAL COURT ERRED IN GIVING INSTRUCTIONS S 3 AND S 9.
Finding no error, we affirm.

FACTS
¶ 2. Fritz Garcia was arrested in Pascagoula, Mississippi and charged with the murder of Ruth Tuller on March 12, 1997. Garcia was brought to Hancock County, at which time his Miranda rights were read and he was interviewed by Sheriff Peterson and Deputy Nathan Hoda regarding various aspects of the facts surrounding the murder which was audibly recorded.
¶ 3. Garcia lived with Tuller since his release from prison the preceding year. Garcia has been in and out of State institutions since 1975 when he was first admitted to the Mississippi State Hospital. At trial, Garcia admitted to the killing of Ruth Tuller. Garcia's claims of innocence emanate from his contention that he was legally insane at the time of the murder.
¶ 4. On March 11, 1997, Deputy Hoda was called to the residence of Ruth Tuller after inquiries were made to the police from concerned friends. Upon reaching the front of the house Hoda found a note on the doorstep which read, "Gone Fishing, be back around noon," with blood stains on it. He then looked through the window of the house and saw that the interior was in complete disarray so he entered the house. In the bathroom he discovered the body of Ruth Tuller stabbed eighty-eight times with a knife embedded in her rectum. The body was in a pool of blood with oil poured upon it and a crucifix and a book on menopause laying atop her body. The official cause of death was described as extensive bleeding due to multiple stab and slash wounds to her body. A videotape of the crime scene was taken, which showed notes scattered throughout the house, blood everywhere and human feces on the floor.
¶ 5. The defense called Officer Kenny Hurt and Officer Matt Karl who both testified to matters regarding the crime scene such as the number of persons walking through the crime scene and when evidence was secured from the crime scene. Dr. Reb McMichael from the Mississippi State Hospital was called as an expert witness regarding Garcia's mental state. Dr. McMichael defined schizophrenia and described the various types. Dr. McMichael, Garcia's expert witness, testified that he felt the acts of Garcia were not the acts of a man who had lost touch with reality and did not know right from wrong. He testified that Garcia was capable on the *1283 day of the homicide of distinguishing right from wrong. Dr. McMichael described Garcia's condition as anti-social personality disorder. He also stated that Garcia is a sociopath. Dr. Maggio was called as a state's expert witness and testified that Garcia acted logically in his actions after the murder and that he was not legally insane at the time of the murder.
I. DID THE LOWER COURT IMPEDE APPELLANT IN HIS EFFORT TO PROVE INSANITY DEFENSE?
¶ 6. Garcia argues that the trial judge restricted his ability to provide evidence in support of his insanity defense. Garcia contends that these restrictions on his procuring testimony from witnesses regarding his insanity were not consistent with the law, and that due to these restrictions the jury was unable to have all the necessary evidence in deciding whether he was legally insane. Garcia contends that the trial court abused its discretion by abating his right to question fully the witnesses on such matters as mental history, past diagnosis and alcohol and drug abuse.
¶ 7. The admissibility and relevancy of evidence is within the discretion of the trial court and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. Reynolds v. State, 784 So.2d 929, 932 (¶ 7)(Miss.2001). "As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference." Johnston v. State, 567 So.2d 237, 238 (Miss. 1990). Additionally, "the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account." Jackson v. State, 594 So.2d 20, 25 (Miss.1992).
¶ 8. It is a well established rule that redirect examination of a witness is generally limited to matters which were brought out on cross-examination of that witness. Lloyd v. State, 755 So.2d 12,14 (¶ 9) (Miss.Ct.App.1999); West v. State, 463 So.2d 1048, 1055 (Miss. 1985). The trial court has broad discretion when ruling on matters brought forth on redirect. Id. This Court may not disturb the lower court's rulings regarding matters concerning redirect examination unless there was a "clear abuse of discretion." Lloyd, 755 So.2d at 14 (¶ 9).
¶ 9. Garcia claims that the trial court hampered his ability to establish a defense of insanity by limiting his cross-examination of witnesses, which in Mississippi, the rule is clearly one of wide open cross-examination of a witness. By doing this Garcia attempts to attack the trial court's determination of relevancy and admissibility protected by an abuse of discretion standard. In actuality though the bulk of Garcia's claims arise from the trial court's limitations on his re-direct of his own expert witness.
¶ 10. The limitations Garcia alludes to in his argument refer to the direct and redirect examination of his own expert witness Dr. McMichael. Forty-three pages of direct and redirect examination of Dr. McMichael was taken by Garcia's attorney. The excerpts regarding the sustained objections on direct examination are as follows:
Q. Would someone smear feces on their body to keep from being sexually assaulted?
STATE. Objection.
COURT. Sustained.
Q. Do you have any record of him being sexually assaulted?
STATE. Objection.
COURT. Sustained.

*1284 Q. If this happened early in the morning during breakfast time, would you expect Fritz Garcia to be under the influence of alcohol at that time?
STATE. Objection. There has been no evidence to support the time as breakfast.
COURT. Sustained.
Q. You don't have anything about him attempting suicide?
STATE. Judge, I'd object to the suicide issue.
COURT. Sustained.
STATE. They are not relevant to sanity.
Q. And you can't conclude it was done as a result of a madman?
A. No, sir; I can not.
STATE. Objection to that characterization.
COURT. Sustained. The jury will disregard the characterization of a mad man.
The excerpts regarding the sustained objections on redirect examination are as follows:
Q. All right. Now, someone that has an alcohol and drug problem, would you expect them to be recommended for alcohol and drug treatment?
STATE. Objection. That is outside the scope of redirect.
COURT. Sustained.
The court did not abuse its discretion in sustaining objections as to these matters as they were either not relevant or not within the scope of redirect.
¶ 11. In Mississippi, the M'Naghten test is used to determine legal insanity. Cannaday v. State, 455 So.2d 713, 720 (Miss.1984); Westbrook v. State, 658 So.2d 847, 850 (Miss.1995); Tyler v. State, 618 So.2d 1306, 1309 (Miss.1993); Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990); Davis v. State, 551 So.2d 165, 173 (Miss.1989). The Supreme Court in Harvey v. State, 207 So.2d 108, 118 (Miss. 1968), stated that it "will continue to adhere to the M'Naghten rule as a test of criminal responsibility by reason of insanity." The function of the M'Naghten test for insanity is to determine if the defendant was unable to distinguish right from wrong when the criminal act in question was committed. Roundtree, 568 So.2d at 1181. In order to establish a defense on the ground of insanity, it must be clearly proved that at the time the act was committed, "the accused was laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it, that he did not know that what he was doing was wrong." Id. See Laney v. State, 486 So.2d 1242, 1245 (Miss. 1986). The issue of insanity is left up to the jury to decide. Yarbrough v. State, 528 So.2d 1130, 1130 (Miss.1988); Hunter v. State, 489 So.2d 1086, 1090 (Miss.1986); Gill v. State, 488 So.2d 801, 802 (Miss. 1986); Gerlach v. State, 466 So.2d 75, 79 (Miss.1985); Frost v. State, 453 So.2d 695, 698 (Miss.1984). In Laney, this Court stated that even though in the record it is uncontradicted that "Laney suffers from the mental disorder, schizophrenia, paranoia type," that "does not in itself make him M'Naghten insane." Laney, 486 So.2d at 1245.
¶ 12. In the case sub judice, Garcia seems to be attempting to establish a diminished capacity defense by claiming that the court erred in not allowing testimony that he may have been under the influence of extreme mental or emotional disturbance at the time of the murder, which substantially impaired his ability to appreciate the criminality of his conduct. In Mississippi, diminished capacity is not a defense to a criminal charge. Cannaday v. State, 455 So.2d 713, 720 (Miss.1984).
*1285 ¶ 13. It is uncontroverted that the sanity of the accused is a matter for the jury to decide. In the case sub judice the jury heard testimony from two doctors regarding the legal sanity of Garcia. Both doctors, one of which was Garcia's expert witness, testified that Garcia knew the nature of his actions and he knew they were wrong. Garcia was not impeded in his effort to prove an insanity defense.
¶ 14. We find that the trial court did not err and that Garcia was not prejudiced or harmed. This issue is without merit.
II. WAS IT ERROR NOT TO SUPPRESS THE ENTIRE STATEMENT GIVEN BY APPELLANT BEFORE HIS ATTORNEY WAS PRESENT?
¶ 15. Garcia argues that the entire statement made to the officers should be suppressed on two main grounds. He claims that due to his lack of mental capacity he was unable to understand the nature of his actions and therefore did not effectively waive his right to have an attorney present during questioning. He also claims that even if he is declared to have requisite capacity required for waiver the waiver was induced by fraud and trickery. He states the lack of a signed waiver evidences this.
¶ 16. The applicable standard of review regarding the admissibility of evidence is as follows: whether or not the trial court abused its discretion. McIlwain v. State, 700 So.2d 586, 590 (Miss. 1997). This Court's standard of review as to the relevance and admissibility of evidence during trial is well established. "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Weaver v. State, 713 So.2d 860, 865 (Miss.1997). The trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs. Hayes v. State, 803 So.2d 473, 475 (¶ 4) (Miss.Ct. App.2001) (citations omitted).
¶ 17. In determining if a statement is voluntarily, knowingly, and intelligently given, the trial court must act as a fact finder, and this Court is very limited in its scope of review. Wimberly v. State, 760 So.2d 800, 802 (¶ 6) (Miss.Ct.App.2000). We are to reverse only where the findings of the trial court are clearly erroneous or against the overwhelming weight of the evidence. Dancer v. State, 721 So.2d 583, 587 (¶ 18) (Miss. 1998). The fact that Garcia did not waive his rights in writing is of little consequence since the lack of a written waiver does not invalidate the waiver. Moore v. State, 493 So.2d 1301, 1303 (Miss.1986). A Miranda waiver does not have to be in writing. Francis v. State, 791 So.2d 904, 907 (¶ 5) (Miss.Ct.App.2001) (citing North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286, (1979)). A statement is admissible as long as the accused has been afforded the protection of the Miranda warning and then knowingly and intelligently waives his rights and freely and voluntarily makes the statement. Moore v. State, 493 So.2d 1301, 1303 (Miss. 1986) citing Edwards v. Arizona, 451 U.S. 477, 486 n. 9, 101 S.Ct. 1880, 68 L.Ed.2d 378, (1981). Whether or not a Miranda waiver is valid is a question of fact that is to be decided by the trial court based on the totality of the circumstances. Hemmingway v. State, 483 So.2d 1335, 1336 (Miss.1986) (citing Neal v. State, 451 So.2d 743 (Miss.1984)). The trial court's decision in this regard will not be set aside unless there is an abuse of discretion. Francis v. State, 791 So.2d 904, 907 (¶ 5) (Miss.Ct. App.2001).
*1286 ¶ 18. The trial court concluded that the first nineteen pages of the taped interview with Garcia would be allowed into evidence as Garcia was read his rights numerous times and understood the rights as they were read to him. The trial court also concluded that information from page nineteen to page thirty were obtained in violation of Garcia's Miranda rights and would be suppressed as illegally obtained evidence. The officers asked Garcia if he wanted to stop the conversation and he replied he did. This was the first time he gave any indication of not wanting to speak with the officers. It was at this time that the trial court determined Garcia invoked his Fifth Amendment protection. The trial court suppressed the interview from this point on. The trial court determined at the suppression hearing which part of the statement violated the rules of admissibility and this court agrees with the trial court's determination. This issue is without merit.
III. DID THE TRIAL COURT ERR IN GIVING INSTRUCTIONS 3 AND S-9.
¶ 19. Garcia contends that these jury instructions do not correctly state the law and if they do that they should not have been given as they do not apply to the facts of the case.
¶ 20. The Supreme Court has held specifically that "errors based on the granting of an instruction will not be considered on appeal unless specific objections stating the grounds are made in the trial court." Oates v. State, 421 So.2d 1025, 1030 (Miss.1982) (citing Collins v. State, 368 So.2d 212 (Miss.1979). A trial judge will not be found in error on a matter not presented to him for decision. Gray v. State, 728 So.2d 36, 70 (¶ 169) (Miss. 1998); Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss.1994). Garcia relies upon Duvall v. State, 634 So.2d 524 (Miss.1994), for the argument that the failure of his attorney in the case at bar to object to the instruction does not prevent this Court from reversing the conviction. In Duvall, we held that the trial court erroneously granted State's Instruction S-2, which provided that deliberate design can originate "at the very moment of the act of violence." Id. at 525. We held this to be reversible error, despite the fact that defense counsel failed to object. In the case sub judice there was no error with the deliberate design instruction the jury was given. "It has long been the case law of this state, that malice aforethought, premeditated design, and deliberate design all mean the same thing." Jones v. State, 710 So.2d 870, 876 (¶ 21) (Miss.1998). Moreover, "deliberate design may be formed very quickly, and perhaps only moments before the act of consummating the intent." Id. at 877 (¶ 30).
¶ 21. Garcia is procedurally barred from asserting instruction S 3 was in error. He did not preserve this issue for appeal because he stated the instruction was acceptable upon the judge allowing another instruction, which was done. That being stated, had the issue not been barred it still lacks merit as it is a proper description of the law especially when taken as a whole with the other instructions. Jury instruction S-3 is written as follows:
The Court instructs the Jury that design to kill is all that is required by Mississippi Law to make a homicide a Murder. Deliberate design means intent to kill, without authority of law and not being legally justifiable, legally excusable or under circumstances that would reduce the act to a lesser crime.
Error if any was harmless regarding instruction S-3.
¶ 22. Garcia argues that instruction S-9 is abstract and while it might *1287 correctly state a principle of law it does not require the jury to apply it to this case. We disagree.
¶ 23. The Supreme Court has held that giving an abstract instruction is not reversible error unless the jury is misled, Kitchens v. State, 300 So.2d 922, 925 (Miss.1974), and if there is no substantial basis for an inference of prejudice when the instructions are read together as a whole, there is no reversible error, Mosley v. State, 396 So.2d 1015, 1018 (Miss.1981). See also Whittington v. State, 523 So.2d 966, 978 (Miss.1988); Ruffin v. State, 447 So.2d 113, 119 (Miss.1984); Pickett v. State, 443 So.2d 796, 800 (Miss.1983). Jury instructions are to be read as a whole and no one instruction is to be taken out of context of the whole. Jackson v. Griffin, 390 So.2d 287, 290 (Miss. 1980); Alexander v. State, 250 So.2d 629, 632 (Miss.1971); see also Murphy v. State, 566 So.2d 1201, 1207 (Miss.1990). Additionally, the mere fact that an instruction is abstract or lacks specificity is not ground for reversal. See Ruffin v. State, 447 So.2d 113, 119 (Miss. 1984). Likewise, a jury instruction is proper and there is no reversible error in it when the instruction is tailored specifically to the facts of the case. Fairley v. State, 467 So.2d 894, 901 (Miss.1985).
¶ 24. Instruction S-9 is written as follows:
If a defendant, when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated and commits an offense while in that condition, he is criminally responsible for such acts.
¶ 25. Garcia's extended drug and alcohol abuse was an issue in the case and was alluded to numerous time throughout the trial. He also submitted in his defense a lengthy dossier of medical records showing his extended drug and alcohol abuse. There was certainly enough evidence to lead a reasonable fair minded juror to believe that Garcia's intoxication was the cause of his behavior.
¶ 26. When read in harmony with the other jury instructions both S-3 and S-9 correctly state the proper principle of law. The granting of S-3 and S-9 were appropriate. This issue lacks merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY ON CHANGE OF VENUE TO RANKIN COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.