ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. Anthony Tucker was indicted for possession of stolen property with a value of over $500 in violation of Mississippi Code Annotated section 97-17-70 (Rev. 2006), which was amended to add habitual-offender status pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2007). Following a jury trial on October 3-5, 2007, a guilty verdict was returned, and Tucker was sentenced as a habitual offender to ten years in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole, probation, or early release, and ordered to pay a fine of $10,000 upon his release.
 

 ¶ 2. Tucker appeals, arguing that: (1) the evidence was legally insufficient to support the verdict or, in the alternative, the verdict is against the overwhelming weight of the evidence; (2) he was improperly charged because the State’s theory of the case was that Tucker actually stole the property; (3) in the alternative, the indictment was insufficient to charge the crime for which he was convicted; (4) the trial judge erred in refusing jury instructions D-2A and D-3, and granting instructions S-3 and S-4; (5) the trial judge erred in failing to sustain a defense objection dur
 
 *168
 
 ing the State’s closing argument; (6) he was deprived of effective assistance of counsel, thereby depriving him of his constitutional right to a fair trial; and (7) cumulative error demands a new trial. The record does not reflect that Tucker’s assistance of counsel was constitutionally ineffective, and the parties have not stipulated that the record is adequate for us to weigh the trial judge’s findings of fact. Therefore, we affirm Tucker’s conviction and sentence without prejudice, so he may supplement the record with additional evidence in which to pursue his ineffective assistance of counsel claim through appropriate post-conviction-relief proceedings.
 

 FACTS
 

 ¶ 3. On Monday October 10, 2005, at approximately 10:00 a.m., Jason Cole arrived at his place of employment, Foot Gear in West Point, Mississippi, and discovered that the gate’s lock had been broken and the front door was ajar.
 
 [1]
 
 Once inside, Cole found that most of the store’s athletic wear was missing from the racks along the wall and throughout the store; the phone line had been cut; and the store’s computer had been stolen. He also discovered that Foot Gear’s storage room had been ransacked, and a myriad of athletic shoes were missing. Pairs of shoes were taken both with and without the matching shoe box.
 
 [2]
 
 After Cole contacted the West Point Police Department, it was discovered that the security-system lines, which were located behind the store, had been cut, thereby disabling surveillance cameras. The amount of inventory stolen from Foot Gear was valued at approximately $109,614.
 

 ¶ 4. No fingerprints were recovered from the store, nor were there any leads related to the burglary until October 18, 2005, when the police received an anonymous tip from a female caller. Detective Zate McGee, who investigated the burglary, testified that the anonymous caller told the police that “Tucker had broken into Foot Gear on October 8th[,] and ... he had hid[den] the merchandise that was stolen in a yellow shed and in a house located at 1893 Matthews Gin Road.” Detective McGee testified that, following standard procedure, she checked to see if Tucker was in the police system. Her investigation revealed that Tucker was listed on the MDOC’s active offender’s list. As a convicted felon released on probation from the State of Wisconsin, Tucker was living in Mississippi via the Interstate Compact Agreement. Tucker had requested a transfer to Mississippi in order to live with his sister, Christann Gibbs (Christann). Tucker’s .parole officer in Mississippi was Mississippi Department of Corrections’ employee Johnny Hancock. After being contacted by the West Point Police, Hancock, accompanied by Officer McGee and Ryan Boykin, with the MDOC, went to investigate the residence described by the informant. During his testimony, Hancock detailed what occurred at the home.
 

 ¶ 5. Upon their arrival, Hancock noticed Tucker walking from the house, which was located at 1893 Matthews Gin Road, toward a yellow storage shed that was located behind the house. Tucker’s sister, Christann; his brother-in-law, James Gibbs (Gibbs); and Erica Witherspoon,
 
 *169
 
 Tucker’s Mend, were also outside the house when Hancock and the other officers arrived. Hancock informed Tucker and the others that they were there to search for stolen merchandise, and initially, Gibbs gave his consent for a search of the house. A search warrant or consent was not needed to search the shed because that was supposed to be the residence of Tucker. As a condition of Tucker’s parole and interstate transfer of his supervision, Hancock was authorized to search Tucker’s residence, or investigate matters concerning Tucker, as he was under the control, or authority, of the MDOC. At trial, there was testimony given that Tucker lived in the house rather than the shed, but evidence supported that someone had been living in the shed. The shed had a bed that appeared to have been slept in, a sofa, a coffee table, an ashtray, electrical service, and other signs of occupancy. Also, Tucker’s packed duffle bag was located in the shed.
 

 ¶ 6. Hancock testified that upon entering the shed, he observed numerous articles of new clothing and athletic shoes. Among other things, Hancock specifically remembered seeing a “whole line of brand new white shoes lined up at the edge of the bed” and “numerous trash bags loaded with brand new clothing.” Hancock testified that Tucker told him that the “items were not stolen, that he got the items from ... [t]wo guys in a white van.” However, at trial, through his attorney and his sister, Christann, Tucker claimed that the items were a gift from Gibbs.
 

 ¶ 7. By the time the police searched the shed, Christann, Gibbs, and Witherspoon had entered the house, locked the door, and would not let the officers enter. The officers determined that a search warrant was needed, so while Detective McGee went to obtain a warrant, Hancock and Boykin remained at the residence and secured the area to ensure that no one left the house. Tucker had been handcuffed and placed in the back seat of the patrol car.
 

 ¶ 8. During this time, Hancock and the other officers noticed a burn pile in the back yard. Because it was evening, the officers used flashlights to discern what had been burned. In the ashes and remains of the burn pile, the officers observed and photographed pieces of clothing tags, wire that appeared to be from commercial-type clothes hangers, and small pieces of plastic that looked like melted plastic clothes-hanger clasps used by retail stores. After obtaining a search warrant and upon entering the house, the officers found approximately 140 items of new athletic wear, jeans, caps, and athletic shoes of various sizes. Not only were there clothing and shoes strewn about the house, there were numerous garbage bags full of new clothes.
 

 ¶ 9. In an effort to explain the copious amounts of new athletic wear, Christann testified that her husband often brought home multiple pairs of expensive athletic shoes and/or clothes for her and their five children, and that she had no reason to suspect that he had not purchased the items. She testified that her husband was “real kindhearted and generous ... [and that he did not] mind helping people.” Christann testified that Gibbs spoiled her and the children, so it was not uncommon for him to bring home six or more pairs of expensive new tennis shoes per person, at one time. However, she also testified that she and Gibbs were going through a divorce, in part, because he had pulled a gun on her, and she thought he brought so many expensive new clothes home to impress her or win her back. Tucker did not testify. At trial, Christann was still a co-defendant, and Gibbs had pled guilty to possession of stolen goods on July 19,
 
 *170
 
 2006. Aggrieved by the jury’s guilty verdict, Tucker now appeals.
 

 DISCUSSION
 

 I. WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT OR, IN THE ALTERNATIVE, WHETHER THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
 

 ¶ 10. Our standard of review relating to the legal sufficiency of evidence is well settled:
 

 In reviewing whether the evidence supporting a jury verdict is legally sufficient, this Court does not determine whether from the evidence we would have voted to convict or acquit. Rather, we view the evidence in the light most favorable to the prosecution and determine whether a rational juror could have concluded
 
 beyond a, reasonable doubt
 
 that all elements of the crime were satisfied. The proper remedy for insufficient evidence is for the Court to reverse and render.
 

 Readus v. State,
 
 997 So.2d 941, 944(¶ 13) (Miss.Ct.App.2008) (internal citations omitted) (emphasis added). However, when reviewing whether the verdict is against the overwhelming weight of the evidence, we sit as a hypothetical “thirteenth juror,” and “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Lamar v. State,
 
 988 So.2d 364, 367(¶ 5) (Miss.Ct.App.2008) (citing
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005)). If an appellate court disagrees with the verdict of the jury, the proper remedy is to grant a new trial.
 
 Id.
 
 (citation omitted).
 

 A. Legal Sufficiency of the Evidence
 

 ¶ 11. Tucker moved for a directed verdict at the close of the State’s case-in-chief and renewed the motion after the State finally rested after rebuttal. Tucker last challenged the legal sufficiency of the evidence when he filed a post-trial motion for a judgment notwithstanding the verdict. “Therefore, this Court is to consider all of the evidence presented throughout the course of the trial. ‘All evidence and inferences derived therefrom, tending to support the verdict, must be accepted as true, while all evidence favoring the defendant must be disregarded.’”
 
 Gibson v. State,
 
 731 So.2d 1087, 1092(¶ 12) (Miss.1998) (citing
 
 Ballenger v. State,
 
 667 So.2d 1242, 1252 (Miss.1995)).
 

 ¶ 12. Tucker argues that “[tjhis case should have never gone to the jury.” And, that “[tjhere was clearly insufficient evidence that Tucker constructively possessed any of the items alleged to be stolen ... or that [Tucker] knew or should have known that the items were stolen.” Considering the evidence in the light most favorable to the State, we disagree.
 

 ¶ 13. Mississippi Code Annotated section 97-17-70(1) states:
 

 A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property
 
 knowing that it has been stolen or having reasonable grounds to believe it has been stolen,
 
 unless the property is possessed, received, retained or disposed of with intent to restore it to the owner.
 

 (Emphasis added). Tucker argues that the State failed to meet its burden to prove that he constructively possessed stolen items because the State did not prove that he exercised dominion or control over the items. With regard to constructive possession, the supreme court has recognized that: “What constitutes a sufficient
 
 *171
 
 external relationship between the defendant and the ... property to complete the concept of ‘possession’ is a question which is not susceptible of a specific rule.”
 
 Curry v. State,
 
 249 So.2d 414, 416 (Miss.1971).
 

 ¶ 14. However, the following must be established:
 

 [T]here must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance [or property] and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the [property or item] involved was subject to his dominion or control. Proximity is usually an essential element, but by itself [it] is not adequate in the absence of other incriminating circumstances.
 

 Id.
 
 In other words, “the State must show incriminating circumstances, in addition to proximity, in order to prove constructive possession.”
 
 Cheatham v. State,
 
 12 So.3d 598, 601(¶7) (Miss.Ct.App.2009) (citing
 
 Fultz v. State,
 
 573 So.2d 689, 690 (Miss.1990)).
 

 ¶ 15. Tucker relies on the fact that he did not own the house or shed that he was living in, and he had only lived there a few days before the stolen athletic wear was discovered. This argument is unavailing, as ownership of residential property or one’s length of stay is not outcome determinative in the legal sufficiency of evidence; it is simply a factor for consideration.
 

 ¶ 16. Tucker previously had told Hancock, his parole officer, that he lived in the shed, and it was evident that someone had been occupying the shed. Also, Tucker’s packed duffle bag was located in the shed. The shed, as well as the house, contained numerous items that were shown to have been stolen from Foot Gear. Although Christann testified that Tucker was occupying the living room of the house, she stated that Tucker did not have a key to the residence; she said that he could not come and go from the home at will. From the evidence presented, one could reasonably conclude that Tucker was primarily occupying the shed, but he had access to the home as well.
 
 [3]
 
 Even if Tucker were sleeping in the living room of the house, there were numerous stolen items in the living room and throughout the house in close proximity to Tucker, Christann, and Gibbs.
 

 ¶ 17. In addition to the evidence of Tucker’s living arrangements, remains of charred clothing tags and burned retail-type clothes hangers were also located on the premises. Additionally, the anonymous informant reported that Tucker had robbed Foot Gear and had hidden the stolen merchandise in the yellow shed and house located at 1892 Matthews Gin Road, where Tucker and the items were found. Most condemning, Hancock testified that Tucker told him that he had received the stolen items from two guys in a white van. This was in contradiction to Christann’s later testimony that her husband had given Tucker the items as a gift.
 

 ¶ 18. Considering the facts in the light most favorable to the prosecution, the record indicates that the State presented ample evidence of “incriminating circumstances” other than proximity to support a finding that Tucker intentionally possessed, received, retained, or disposed of stolen property knowing that it had been stolen or having reasonable grounds to
 
 *172
 
 believe it had been stolen. This issue is without merit.
 

 B. Overwhelming Weight of the Evidence
 

 ¶ 19. Tucker argues that the overwhelming weight of the evidence is against the verdict, and that the State failed to prove that Tucker exercised dominion or control over the stolen items, used the items, or intended to convert the items for personal use. Tucker asserts that the “only evidence of any guilty knowledge came from Johnny Hancock, who testified [that] Tucker told him he [had] received the property from two guys in a van.” This assertion is inadequate to prove that the weight of the evidence is against the verdict.
 

 ¶ 20. Tucker correctly recognizes
 
 Thompson v. State,
 
 457 So.2d 953, 956 (Miss.1984) for the principle that mere possession without any indication of guilty knowledge is insufficient to uphold a conviction of receiving stolen goods. The evidence presented to the jury in
 
 Thompson
 
 was minimal when compared to the evidence presented to the jury in the instant case. And, contrary to Tucker’s argument, “[a] conviction may be had on circumstantial evidence alone.”
 
 Tolbert v. State,
 
 407 So.2d 815, 820 (Miss.1981) (citation omitted). This is true because “[c]ircumstantial evidence need not exclude every possible doubt but only every reasonable doubt, or reasonable hypothesis of innocence.”
 
 Id.
 
 (citation omitted).
 

 ¶ 21. In
 
 Thompson,
 
 a set of silverware had been stolen from a residence and found its way to Charles Thompson’s possession.
 
 Thompson,
 
 457 So.2d at 955. Thompson admitted purchasing the silverware and sending it to a mint, but he denied knowing that it was stolen.
 
 Id.
 
 The only evidence that the State presented was a postal receipt, memorializing the shipment of the silver to a mint, which was found in Thompson’s rented storage building inside a stereo equipment box, that was shown to be property of Rose’s Department Store.
 
 Id.
 
 In
 
 Thompson,
 
 the fact that the stereo equipment was stolen
 
 was not
 
 presented to the jury because it was excluded, and the State presented no evidence other than the shipping receipt to show that Thompson must have known that the items were stolen.
 
 Id.
 
 The supreme court found that argument to be tenuous, and it held the State had presented no proof that Thompson knew the items were stolen; the supreme court went on to opine that guilty knowledge was the essence of the crime.
 
 Id.
 
 at 955-56.
 

 ¶ 22. Returning to the instant case, a review of the record reveals that the circumstantial evidence presented weighed heavily against a reasonable hypothesis of innocence. We will not reiterate the numerous facts stated above, but suffice it to say, there was substantially more evidence presented to the jury than a lone receipt found in a storage building. The weight of the evidence established that a reasonable person could have concluded that Tucker knew or should have known that the items were stolen when “two guys in a white van” appeared to give away hundreds, and possibly thousands, of dollars’ worth of new athletic wear.
 
 [4]
 
 Other than Christann’s conflicting testimony, Tucker has presented no evidence that Hancock was inaccurate or dishonest in his account of Tucker’s admission. When presented with conflicting testimony, it is for
 
 *173
 
 the jury to weigh the credibility of the witnesses, as well as the evidence.
 
 Nix v. State,
 
 8 So.3d 141, 146(¶ 26) (Miss.2009) (citation omitted). If the means by which Tucker said he had received the stolen items were not enough to deduce guilty knowledge, the removal and burning of the clothing tags and retail-type clothes hangers were also indicative of guilty knowledge. Contrary to Tucker’s assertion, there was more presented to the jury than hearsay testimony of an anonymous informant that Tucker was in possession of the stolen merchandise, and we hold that the verdict reached by the jury is consistent with the weight of the evidence presented by the State in the instant action. Accordingly, this issue is without merit.
 

 II. WHETHER TUCKER WAS IMPROPERLY CHARGED BECAUSE THE STATE’S THEORY OF THE CASE WAS THAT TUCKER ACTUALLY STOLE THE PROPERTY.
 

 ¶ 28. In what seems rather contradictory to his claim of innocence and ignorance, Tucker relies on
 
 Hentz v. State,
 
 489 So.2d 1386, 1389 (Miss.1986) for this issue asserting that, where a defendant is charged with receiving stolen goods and the evidence shows that he is guilty of the larceny of the goods in question, he cannot be convicted of possession of stolen property. Tucker is correct in his understanding of
 
 Hentz.
 
 The supreme court stated:
 

 It is elementary law that one who steals property cannot be convicted of receiving, concealing or aiding in concealing the property stolen. The statutes making the receiving of stolen goods a substantive offense are not intended to punish the thief by way of a double penalty but are directed against those who would make theft easy or profitable. Nor can one who has stolen property jointly with another, that is to say, who jointly with another takes part in the caption and asport[a]ta[t]ion of the property, be convicted of receiving stolen property....
 

 Id.
 
 (quoting
 
 Thomas v. State,
 
 205 Miss. 653, 39 So.2d 272, 273 (1949)). However, Tucker does not fully address the significant differences presented in
 
 Hentz
 
 and the instant case.
 

 ¶ 24. In
 
 Hentz,
 
 a case which involved the theft of a combine and its subsequent destruction, the State failed to furnish discovery to the defense that may have proven that Larry Hentz was guilty of the actual theft, rather than the crime he was charged with, which was possession of stolen goods.
 
 Id.
 
 at 1388. Such evidence would have provided Hentz with a complete defense to the crime of possession of stolen goods.
 
 Id.
 
 The State claimed that it did not furnish the evidence to the defense because it did not think the evidence was exculpatory.
 
 Id.
 
 However, at trial, the State presented evidence that Hentz, in his own truck, took an accomplice to the place where the combine was located; he was present, aiding, abetting, and participating in the theft of the combine; and Hentz arranged for the destruction of the combine in order to remove it from his father’s property.
 
 Id.
 
 at 1389. Unlike Hentz, no testimony or evidence established that Tucker was present at the scene of the burglary.
 

 ¶ 25. As discussed, Tucker initially told Hancock the merchandise found in the shed was not stolen, and that he had gotten it from two guys in a white van. However, he discarded that reason, and at trial, he argued Gibbs must have bought or somehow acquired the items. He asserted that they were simply a gift to him. In response, the State was allowed to present evidence that the items were stolen from Foot Gear, and that Tucker knew or should have known that he was in possession of stolen merchandise. It was made
 
 *174
 
 clear to the jury, through the trial judge’s statements, that Tucker was on trial for possession of stolen goods, not burglary. Furthermore, testimony was given that the police had recovered no fingerprints or leads about the burglary until the anonymous informant contacted the police. Other than the State’s remarks, during its closing argument, that “they” robbed the store or that it was an “ex-con” or “professional” job, the State offered no proof that Tucker was involved in the actual burglary. The remarks were defused when the trial judge stated, “[t]he jury is allowed to draw reasonable inferences from the evidence.
 
 The defendant is not on trial for
 
 burglary.”
 
 [5]
 
 (Emphasis added). Although the aftermath of the burglary and some surrounding events were described, the record reflects that the State presented a case against Tucker for possession of stolen property, for which he was charged. And, unlike in
 
 Hentz,
 
 there is no indication in the record that any discovery, prior to trial, was withheld from Tucker. This issue is without merit.
 

 III. WHETHER THE INDICTMENT WAS INSUFFICIENT TO CHARGE THE CRIME FOR WHICH TUCKER WAS CONVICTED.
 

 ¶ 26. Although Tucker did not raise this issue at trial, “substantive challenges to the sufficiency of the indictment are not waivable and may be raised for the first time on appeal.”
 
 Havard v. State,
 
 928 So.2d 771, 801(¶ 59) (Miss.2006) (citation omitted). Tucker claims that the indictment in the instant case “clearly had a substantive defect in failing to sufficiently identify the stolen property [he] was alleged to constructively possess.” We disagree.
 

 ¶ 27. The determination of whether an indictment is fatally defective is a question of law and warrants a broad standard of review by this Court.
 
 Nguyen v. State,
 
 761 So.2d 873, 874(¶ 3) (Miss.2000) (citation omitted). Therefore, as a question of law, the standard of review is de novo.
 
 Jones v. State,
 
 993 So.2d 386, 394(¶ 19) (Miss.Ct.App.2008) (citation omitted). The purpose of an indictment is “to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense....”
 
 Moses v. State,
 
 795 So.2d 569, 571(¶ 13) (Miss.Ct.App.2001).
 

 ¶ 28. Rule 7.06 of the Uniform Circuit and County Court Rules,
 
 [6]
 
 provides the framework for a proper indictment, and it states the following:
 

 The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
 

 1. The name of the accused;
 

 2. The date on which the indictment was filed in court;
 

 3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
 

 4. The county and judicial district in which the indictment is brought;
 

 5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to
 
 *175
 
 state the correct date shall not render the indictment insufficient;
 

 6. The signature of the foreman of the grand jury issuing it; and
 

 7. The words “against the peace and dignity of the state.”
 

 The court on motion of the defendant may strike from the indictment any sur-plusage, including unnecessary allegations or aliases.
 

 [Adopted effective May 1, 1995; amended August 26,1999.]
 

 We now consider the indictment in the instant case. It included the following:
 

 ANTHONY TUCKER ... on or about the 18th day of October, 2005, in the County aforesaid, did unlawfully, wilfully, and feloniously, receive or possess the personal property of Haresh Khiata-ni d.b.a. Foot Gear, to-wit: athletic apparel, said property having a total value in excess of $500.00, and having been feloniously taken away from the said Haresh Khiatani d.b.a. Foot Gear, and further that the said ANTHONY TUCKER knew or should have known at the time of the receiving or possessing of said property that said property had been so feloniously taken, in violation of MCA § 97-17-70; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi.
 

 ¶ 29. Tucker’s indictment included the seven formal requirements stated above. It appears that Tucker takes issue with the fact that he was indicted for possessing “athletic apparel ... having a total value in excess of $500.00” instead of individually-listed items of apparel. He claims that because there was “property recovered in all of the different areas of James Gibb’s property, this [description] was insufficient.” Tucker relies heavily upon
 
 Nguyen
 
 for support of his argument related to this issue.
 

 ¶ 30. In
 
 Nguyen,
 
 the supreme court found an indictment, which stated that Khang Son Nguyen and Thi Mai Le (Nguyen appellants) were charged with receiving or possessing “114 items, including ...,” was insufficient.
 
 Nguyen,
 
 761 So.2d at 877(¶ 12). The supreme court stated that since the indictment said “including” rather than “comprised of,” there could have been other items that the Nguyen appellants could have been accused of receiving, which were not included in the indictment.
 
 Id.
 
 Also, and even more significant, the supreme court found that the indictment was insufficient because the stolen property was made up of six different categories or classifications of goods.
 
 Id.
 

 [7]
 

 That is not true in the instant case.
 

 ¶ 31. Despite Tucker’s assertion that we “would be hard-pressed to find a citizen in [Mississippi] to agree that a[n] Ole Miss sweatshirt is identical to a Mississippi State or Jackson State sweatshirt[,]” we think that all would agree they, nonetheless, both are sweatshirts. And as such,
 
 *176
 
 both sweatshirts would be considered athletic wear, regardless of what institution they may promote. Likewise, items such as caps, shirts, tennis shoes, and jeans are also distinguishable as athletic wear. Unlike the appellants in
 
 Nguyen,
 
 Tucker was not convicted of possessing various classes of items for which he was not indicted. Rather, he was charged with and convicted of possessing only one class of stolen property — athletic apparel.
 
 [8]
 

 ¶ 32. Specifically, Tucker was indicted for receiving or possessing athletic wear, which was stolen from Foot Gear and exceeded a value of over $500, and that is exactly what he was convicted of. It is of no instance that the indictment did not list each individual cap, sweatshirt, pair of tennis shoes, etc. The purpose of an indictment is “to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense.”
 
 Moses,
 
 795 So.2d at 571(¶ 13). In our judgment, the indictment was sufficient to inform Tucker as to the charges he was facing such that he had a fair opportunity to prepare a defense. Accordingly, this issue is without merit.
 

 IV. WHETHER THE TRIAL JUDGE ERRED IN GRANTING AND REFUSING CERTAIN JURY INSTRUCTIONS.
 

 ¶ 33. Tucker argues that he was refused an instruction that allowed him the opportunity to present his theory of the case. In addition, Tucker contends that the instructions received by the jury were “hopelessly confusing and conflicting.” Jury instructions are to be given or refused based upon the following guidelines:
 

 Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
 

 Goff v. State,
 
 14 So.3d 625, 663 (¶ 163) (Miss.2009) (citation omitted). Tucker argues that the State presented an elements instruction which did not specify which items it alleged Tucker possessed, and the State failed to prove the items came from Foot Gear or exceeded $500. We disagree. Submitted jury instruction S-2 states:
 

 The [c]ourt instructs the [j]ury that if you find from the evidence in this case beyond a reasonable [doubt] that the Defendant, Anthony Tucker, alone or with another or others, did on or about October 18, 2005, unlawfully, willfully, and feloniously, possess athletic apparel which had been stolen from Footgear, [sic] having a total value in excess of $500.00, and the Defendant knew or should have known at the time of possessing said property -that it was stolen, then you shall find the Defendant guilty as charged of Possession of Stolen Property. If the State has failed to prove any of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.
 

 ¶ 34. There was ample evidence presented at trial that established the athletic apparel, which was discovered in the shed, came from Foot Gear and exceeded a value of $500. Testimony established that the items correlated to Foot Gear’s inven
 
 *177
 
 tory records, and the approximate value of the various items was presented to the jury. Additionally, testimony established that there were pairs of shoes found at the scene that matched shoe boxes that were left behind at the store. As there was an evidentiary foundation, the trial court did not err in submitting jury instruction S-2.
 

 ¶ 35. Next, Tucker contends that the trial judge committed an error by submitting jury instruction S-3 because it failed to accurately define the crime, and there was no evidence that Tucker aided, counseled, or encouraged Gibbs in the commission of the crime of possession of stolen property. Jury instruction S-3 states the following:
 

 The [c]ourt instructs the [j]ury that under the laws of the State of Mississippi anyone who aids, assists, or encourages in the commission of a crime is deemed a principal in that crime and is just as responsible as if he had committed the whole act with his own hand. Therefore, if you find from the evidence in this case beyond a reasonable doubt that the Defendant, Anthony Tucker, did aid, assist, or encourage another or others in the commission of the crime of possession of stolen property, then the Defendant was a principal to the possession of stolen property and is criminally responsible for that crime.
 

 1136. Jury instruction S-3 is an accurate statement of law. It is well settled that “any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an ‘aider and abettor’ and is equally guilty with the principal offender.”
 
 Swinford v. State,
 
 653 So.2d 912, 915 (Miss.1995) (citation omitted). In
 
 Swinford,
 
 the supreme court elaborated further, and stated:
 

 Aiding and abetting is defined to be “the offense committed by those persons who, although not the direct perpetrators of a crime, are yet present at its commission, doing some act to render aid to the actual perpetrator....” And[,] such aiding and abetting may be manifested by acts, words, signs, motions,
 
 or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition.
 

 Id.
 
 (citation omitted) (emphasis added).
 

 ¶ 37. The record is replete with evidence to support a conclusion that Tucker had conduct which evinced a design to encourage or approve of the crime. Whether he lived in the home where a plethora of stolen items were strewn about, or whether he lived in the shed and had received the items from two guys in a white van, there was a sufficient evidentia-ry foundation presented such that the instruction could be given to the jury. We find no error in the trial judge’s decision to submit jury instruction S-3.
 

 ¶ 38. Next, Tucker argues that the trial judge improperly denied jury instructions D-2A and D-3. Instruction D-2A states in relevant part: “If the State fails to prove beyond a reasonable doubt that the property in question was not given to Anthony Tucker as a gift and that he knew or had reasonable grounds to believe it was stolen then you should find the Defendant not guilty.” And, instruction D-3 states: “The [c]ourt instructs that if the accused, Anthony Tucker, was at the time of the offense ignorant to the fact the property in question was stolen[,] then Anthony Tucker can not be found guilty of the offense of [Receiving or [possession [sic][s]tolen [property.”
 

 
 *178
 
 ¶ 39. It is obvious these instructions address the State’s burden to prove that Tucker knew or had reason to know that the items were stolen. As shown in jury instruction S-2 supra, other instructions informed the jury of the State’s burden and what it had to prove to justify a guilty verdict. When read as a whole, the proffered jury instructions were repetitious. Therefore, we find the trial judge did not err in refusing instructions D-2A and D-3.
 

 ¶ 40. Finally, Tucker contends that it was error to grant instruction S — 4, which states:
 

 The [cjourt instructs the (j]ury that possession as used in these instructions does not mean exclusive possession, or exclusive dominion and control. Two or more people maybe [sic] in possession of the same property at the same time if that property is subject to their dominion and control, no matter how fleeting the possession, or how slight the dominion and control.
 

 Tucker argues that this instruction is in conflict with instruction D-l, which was given; and therefore, Tucker contends that this caused the jury instructions, when read as a whole, to be confusing to the jury. It appears that Tucker argues that instruction D-l describes possession over individual items rather than any, or all, of the property stolen from Foot Gear. Even a cursory reading of the two instructions reveals that this argument is flawed.
 

 ¶ 41. Instruction D-l states: “The [c]ourt instructs the jury that to constitute possession, there must be sufficient facts to warrant a finding that Anthony Tucker exercised custody or control of the particular property and was intentionally and consciously in possession of it.” When read as a whole, it is clear that the “particular property” described in instruction D-l is the same “property” described in jury instruction S-2 supra, which was described as athletic apparel stolen from Foot Gear exceeding a value of $500.
 

 f 42. Tucker also takes issue with the instruction’s wording related to the duration of possession: specifically, the words “fleeting” and “slight.” This argument is unpersuasive. The supreme court has held that: “In our state to be found guilty of receiving stolen property[,] the [S]tate must prove that the accused had control or dominion over the custody of the goods. [But,] [t]his dominion or control, however,
 
 may be brief and temporary.” Lewis v. State,
 
 573 So.2d 713, 714 (Miss.1990) (internal citation omitted) (emphasis added). The jury instructions accurately reflected the law and clearly informed the jury, and when read as a whole, the instructions were not conflicting or confusing. Therefore, this issue is without merit.
 

 V. WHETHER THE TRIAL JUDGE ERRED IN FAILING TO SUSTAIN A DEFENSE OBJECTION DURING THE STATE’S CLOSING ARGUMENT.
 

 ¶ 43. As discussed during its closing argument, counsel for the State speculated that Foot Gear had been burglarized by more than one individual, using the term “they” several times. The State also referred to the burglary as an “ex-eon” job. The defense objected arguing that the State had not presented any evidence as to whom “they” may have been, and the defense also objected to any reference to an “ex-con job” arguing that the State was trying to persuade the jury that Tucker had committed the burglary. The trial judge overruled the objection as to the statements relating to the burglary and sustained the objection as to the “ex-con” statements. The judge explained that the jury was allowed to draw reasonable inferences from the evidence presented. The trial judge was correct.
 

 
 *179
 
 ¶ 44. The supreme court has stated that:
 

 Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.
 
 The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is
 
 whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.
 
 In closing argument, that wide latitude extends not only to the facts presented in evidence, but also to deduction and conclusions he may reasonably draw therefrom, and the application of the law to the facts. However, arguing statements of fact which are not in evidence or necessarily inferable from facts in evidence is error when those statements are prejudicial.
 

 Dampier v. State,
 
 978 So.2d 221, 235-86(¶ 39) (Miss.2008) (internal citations and quotations omitted). This Court must first determine whether the individual comments constituted “improper argument,” and if so, we must then determine whether the “improper argument” created “unjust prejudice.”
 
 Id.
 
 at 236(¶ 40) (citation omitted). As illustrated above, Tucker’s sole defense was ignorance that the items were stolen. With that defense in mind, we consider the disputed statement and determine whether it was improper:
 

 Ladies and gentlemen, does this look like a professional person’s job or like a bunch of 20 year olds going and smashing the window and just grabbing some stuff and running? You know what it looks like. You can tell what it looks like. And, ladies and gentlemen, if you believe anything that Ms. Gibbs said, that stuff appeared at her house the very next morning[,] ... you tell me who you think knew stuff was stolen at that house[.]
 

 ¶ 45. We find that the statement was not an improper argument, and it was reasonable for the State to theorize about how the items were stolen and present that theory in an effort to refute Tucker’s claimed ignorance. The nature of the burglary and the experience of those who committed it were inferable from the evidence presented. Furthermore, we find that the statements did not result in unjust prejudice to Tucker given that the trial judge distinctly stated that Tucker was not on trial for burglary. There can be no doubt that the jury was aware that they were not being asked to determine whether Tucker committed the burglary. Rather, the record indicates that they would have been aware that they were to determine whether Tucker knew or should have known that the numerous items found in the shed and house where he was living were stolen.
 

 ¶ 46. Considering the wide latitude given to an attorney when arguing his or her ease to a jury and applying the two-part standard set forth in
 
 Dampier,
 
 we find the State’s argument was not out of bounds for a closing argument, so there is no plain error to be found.
 
 Id.
 
 (citation omitted). Accordingly, this issue is without merit.
 

 VI. WHETHER TUCKER WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.
 

 ¶47. Tucker contends that his trial counsel was deficient and committed numerous errors throughout the trial. Tucker asserts six reasons that his defense counsel’s performance should be considered ineffective: (1) counsel failed to make objections as the State extracted hearsay testimony from State witnesses related to
 
 *180
 
 the anonymous tip that Tucker had broken into Foot Gear and was hiding the stolen merchandise in a house and yellow shed located at 1893 Matthews Gin Road; (2) counsel was ineffective for failing to prevent the State from eliciting testimony that he was on parole; (3) counsel should not have questioned Hancock about other bad acts allegedly committed by Tucker, namely complaints, in the form of signed affidavits, by Tucker’s ex-wife alleging that Tucker threatened and harassed her; (4) counsel failed to object to the indictment as it was insufficient to allege what items Tucker was supposed to have constructively possessed; (5) counsel submitted an incomplete jury instruction on constructive possession, and the jury instructions were confusing and contradictory; and (6) counsel failed to request the jury be admonished to disregard statements made by the State during closing arguments referring to “ex-cons” and “they” committing the burglary, as well as not requesting a mistrial.
 

 ¶ 48. The case of
 
 Read v. State,
 
 430 So.2d 832, 841 (Miss.1983), established that a convicted criminal is permitted to raise the issue of ineffective assistance of counsel on direct appeal, even if the matter has not been presented to the trial court. When the issue is raised, this Court’s review is strictly limited to a review of the appellate record.
 
 Id.
 
 We may determine the merits of a claim of ineffective assistance of counsel only when the record affirmatively shows ineffectiveness of constitutional dimensions, or the parties have stipulated that the record is adequate such that further information concerning the findings of fact by a trial judge are not needed for appellate review.
 
 Id.
 
 If these two conditions are not met, this Court should review the other issues in the case, and if we otherwise affirm the conviction, we should do so without prejudice so the defendant may raise the issue of ineffective assistance of counsel through appropriate post-conviction-proceedings.
 
 Id.
 

 ¶ 49. After reviewing the record, we do not find that the record affirmatively shows ineffectiveness of constitutional dimensions, and the parties have not stipulated that the record is adequate such that we can adequately weigh the trial judge’s findings of fact. Therefore, we affirm Tucker’s conviction without prejudice so as to allow him to further supplement the record with additional evidence and raise his ineffective-assistance-of-counsel claim through appropriate post-conviction-proceedings.
 

 VII. WHETHER CUMULATIVE ERRORS DEMAND A NEW TRIAL.
 

 ¶ 50. “This court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal.... However, where there was no reversible error in any part, so there is no reversible error to the whole.”
 
 Michael v. State,
 
 918 So.2d 798, 806(¶ 18) (Miss.Ct.App.2005) (citing
 
 McFee v. State,
 
 511 So.2d 130, 136 (Miss.1987)). Tucker has failed to establish the existence of errors upon which a claim of cumulative effect can be grounded. Therefore, this issue is without merit.
 

 ¶ 51. Finding no reversible error in the trial below, we affirm the judgment of the circuit court.
 

 ¶ 52. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF POSSESSION OF STOLEN PROPERTY AND SENTENCE AS A HABITUAL OFFENDER OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE, PROBATION, OR EARLY RELEASE, AND TO PAY A FINE OF $10,000 UPON RELEASE FROM CONFINEMENT, IS AF
 
 *181
 
 FIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . At the time of the burglary, Foot Gear in West Point, Mississippi was owned by Haresh Khiatani.
 

 [2]
 

 . The shoe boxes left behind later proved helpful in verifying that the merchandise recovered was the same that was stolen from Foot Gear. Some of the shoes recovered bore the same model number as its matching shoe box, which the thieves left at the store.
 

 [3]
 

 . Testimony was given that established that the shed did not have plumbing or running water.
 

 [4]
 

 . Tucker has made no assertion that he purchased the items, and it was established at trial that he did not have a job. Also, Chris-tann testified that her husband and another relative gave Tucker clothing because Tucker had so few possessions.
 

 [5]
 

 . The objection in reference to the "ex-con” statement was sustained.
 

 [6]
 

 . Formerly Rule 2.05 of Uniform Rules of Circuit Court Practice.
 

 [7]
 

 . In
 
 Nguyen,
 
 the supreme court discussed previous cases wherein the property description in an indictment was found to be sufficient. The supreme court stated:
 

 This Court summarized from earlier cases ... that "a diamond ring,” "one mule and one horse,” and "one suit of clothes” have been a sufficient description of the property at issue, even though a more particular description of each might have been possible. A description of a "neat calf” has been found sufficient. A description of "110 pounds of dairy feed,” along with the value of the feed has been found sufficient. An indictment alleging the theft of "two Chevrolet motors (less head) and one Plymouth Motor (with head)” has been found sufficient. A description of "six sacks of ammonium nitrate” has also been found sufficient.
 

 Nguyen,
 
 761 So.2d at 876(¶ 11) (internal citations omitted).
 

 [8]
 

 . There were some non-clothing items taken from the house, but they were returned when it was determined that the items did not belong to Foot Gear.